[Crim. No. 1936. In Bank.—September 24, 1915.]

## THE PEOPLE, Respondent, v. UNG SING, Appellant.

CRIMINAL LAW—MURDER—SUFFICIENCY OF EVIDENCE.—In this prosecution for murder it is held that the record is such as to indicate that the jury could not reasonably arrive at any other conclusion except that the defendant was guilty of murder in the first degree.

ID.—TESTIMONY TAKEN BEFORE GRAND JURY—CONSTRUCTION OF SECTIONS 925, 869, PENAL CODE.—Section 925 of the Penal Code prescribes the only instance under which the testimony given before a grand jury shall be reported by a stenographic reporter or at all, and that is, "on the demand of the district attorney" the grand jury must appoint such a reporter. Where no such demand is made by the district attorney, it is not required that the testimony be reported. Section 869 of the Penal Code is applicable only to preliminary examinations by magistrates.

ID.—RIGHT OF DEFENDANT TO COPY OF TESTIMONY.—The provision of section 925 of the Penal Code, that the defendant shall be furnished with a copy of the testimony given before the grand jury, does not purport to apply to a case in which no demand is made for a reporter and the testimony has not been taken down by a reporter.

ID.—QUALIFICATION OF JUROR—CHALLENGE FOR ACTUAL BIAS.—It is held in this case that the challenge for actual bias interposed against a certain juror who was subsequently excused by peremptory challenge, was properly denied by the trial court.

ID.—EVIDENCE—CROSS-EXAMINATION.—Cross-examination of a witness on a collateral matter, as to which no examination was warranted by anything adduced on the direct examination of the witness, is properly refused; and in such a case a question asked of the widow of the deceased on cross-examination, "And was there not a Japanese arrested by reason of his being at your place and disturbing your peace and that of your husband?" is objectionable for this reason.

ID.—EXAMINATION OF DEPUTY DISTRICT ATTORNEY—CAUSING ARREST OF JAPANESE THREATENING LIFE OF DECEASED—OPINION.—In such a case objection on the general grounds was properly sustained to a question asked by the defendant of a deputy in the district attorney's office as follows: "Did you not cause the arrest of a Japanese for threatening to take the life of the wife of this man that was killed?" Such an act on the part of the witness would have amounted to no more than an expression of opinion by him to the effect that information given him was sufficient to warrant a judicial investigation, something that is clearly inadmissible.

ID.—PISTOL AND CARTRIDGE SHELLS FOUND NEAR BODY OF DECEASED.—In such a case there was no error in allowing in evidence a 38-cali-

ber pistol found near the body of the deceased, and the cartridge shells (five loaded and one unloaded) taken therefrom, where one of the bullets causing the death was of 38-caliber.

ID.—INSTRUCTIONS—CIRCUMSTANTIAL EVIDENCE.—An instruction that, "There is nothing in the nature of circumstantial evidence that renders it any less reliable than in other classes of evidence. A man may as well swear falsely to an absolute knowledge of the facts as to a number of facts from which, if true, the facts on which the guilt' or innocence depends must inevitably follow," is more in the nature of argument than a declaration of law, and might better have been omitted from the instruction, but it does not constitute reversible error, nor can it be held that under the circumstances of this case the instruction in effect and inferentially told the jury to disregard the testimony of the defendant.

ID.—MOTION FOR NEW TRIAL—CLAIM THAT ONE OF THE JURORS SLEPT WHILE PART OF TESTIMONY TAKEN—CONFLICTING EVIDENCE—RULING OF COURT CONCLUSIVE.—In such a case where an affidavit of one of the attorneys for the defendant was filed on motion for new trial in which it was substantially charged that one of the jurors was asleep during a great portion of the time that one of the witnesses for the prosecution was testifying, which fact was positively denied by the affidavit of the juror, there being a conflict of evidence on the question, the ruling of the trial court denying the motion for a new trial in so far as this ground was concerned, thereby accepting the statement of the juror as true, is conclusive on appeal.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Ben Berry, and Max Grimm, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

ANGELLOTTI, C. J.—Defendant and one Uee Quey, who gave his true name as Uee Quooey, two Chinese, were jointly indicted for the crime of murder, in the unlawful killing on November 4, 1914, of one Y. Iwanaga. Separate trials having been demanded by the defendants, appellant was tried first, and convicted of murder in the first degree. This is an appeal by him from the judgment pronounced on said conviction, and from an order denying his motion for a new trial.

1. The record discloses that the deceased was murdered a few minutes after 12 o'clock, on the morning of November 4, 1914. He was walking on the sidewalk of a street in the city of Stockton and was within a few doors of his place of business, when two men approaching him from behind fired three shots at him, and then ran away. Each of the bullets entered his body from the rear, and each inflicted a fatal wound. The only question in the case was as to the identity of the assailants, the theory of the district attorney being that they were appellant and Uee Quooey. The evidence very clearly pointed to appellant as one of them. Near the body of the deceased was found a Smith & Wesson 38-caliber revolver, and in the body of deceased, one of the bullets causing death was a 38-caliber. The other two bullets causing death which were found in the body were 25-caliber, and near the body were found two empty 25-caliber shells. Appellant was taken into custody a few minutes after the shooting, in a lumber yard near by, to which confessedly he had fled. He admitted having run from the scene of the homicide, denying absolutely, however, that he had participated therein, and giving as his reason for the flight a statement substantially to the effect that he thought he was being pursued by two men who were shooting at him. He did not deny having been at or near the place of the homicide at the time thereof. Upon being searched, there was found on him a Mauser automatic 25-caliber revolver, carrying nine cartridges, which contained only six loaded shells. He admitted having recently fired two or three shots therefrom, but, as above stated, said he had fired them at two men who were apparently pursuing him. November 3, 1914, was the day of a general election, and there was a polling place diagonally across the street from the place of the homicide, in and around which at the time thereof there were several persons who were witnesses on the trial. The evidence given by these witnesses was all to the effect that there were only two or three shots, and that, including the deceased, there were only three men in the vicinity of the homicide, the deceased and two others. The record is such as to indicate that the jury could not reasonably arrive at any other conclusion on the question of appellant's guilt than the one evidenced by its verdict.

2. At the time of his arraignment, appellant asked for an order directing the district attorney to furnish a copy of the

testimony introduced before the grand jury upon which the indictment was based. This order the court declined to make for the reason that, as was disclosed, there was no shorthand reporter present at the taking of such testimony. Defendant subsequently moved that the indictment be set aside on the ground that the same was not found and presented as prescribed in the Penal Code, in that the evidence and testimony taken before the grand jury was not reduced to writing, and that no competent stenographic reporter was appointed and sworn to report the testimony before the grand jury. The motion was denied. There was no error in this ruling. Section 925 of the Penal Code, [Stats. 1911, p. 434], prescribes the only circumstances under which the testimony given before a grand jury shall be reported by a stenographic reporter or at all. The section provides that *"on the demand of the district attorney"* the grand jury must appoint such a reporter, etc. Where no such demand is made by the district attorney, it is not required that the testimony be reported. Section 869 of the Penal Code is applicable only to preliminary examinations by magistrates. The record here cannot be fairly read as indicating that the district attorney made any such demand or even suggestion in this case. All that there is in the record on the subject is the question by the court asked after defendant demanded a copy of the testimony, "Was the testimony taken down by a stenographer?" and the answer of the district attorney, "If your honor please, there was no reporter." Of course the provision in section 925 of the Penal Code, that the defendant shall be furnished with a copy of the testimony given before the grand jury does not purport to apply to a case in which no demand has been made for a reporter, and the testimony has not been taken down by a reporter.

3. Complaint is made that the trial court erred in disallowing a challenge for actual bias interposed to the juror Bennett, who was subsequently excused by a peremptory challenge. A careful reading of the report of the complete examination of this juror satisfies us that the trial court was amply warranted in its conclusion that the challenge should be disallowed. The only basis for any objection to him was in his answers to certain questions as to the effect on his mind of the fact that the defendant had been indicted by a grand jury. He had no opinion whatever as to the merits of the

case. The trial court was justified by his testimony as a whole in concluding that he was absolutely fair and unbiased, and ready and able to impartially try the issues to be submitted, and that the fact that the defendant had been indicted would not have the slightest influence with him in arriving at a conclusion.

4. The question asked the widow of the deceased on cross-examination: ''And was there not a Japanese arrested by reason of his being at your place and disturbing your peace and that of your husband?'' was not proper cross-examination, and the court did not err in directing the witness that she need not answer. As substantially stated by the court it was a collateral matter, as to which no examination was warranted by anything adduced on the direct examination of the witness.

5. Mr. Van Vranken, a deputy in the office of the district attorney, was called by defendant as a witness, and asked: ''Did you not cause the arrest of a Japanese for threatening to take the life of the wife of this man that was killed?'' An objection that the proposed testimony was incompetent, irrelevant, and immaterial was sustained. The ruling was correct, even in the light of the statement subsequently made to the court as to the purpose of the question. Whether the deputy district attorney caused the arrest of a Japanese on any such charge as that specified was, of course, immaterial and incompetent. Such an act on his part would have amounted to no more than an expression of opinion by him to the effect that information given him was sufficient to warrant a judicial investigation, something that was clearly inadmissible. No other action of the court relative to evidence in regard to any matter referred to in the statement of counsel made to the trial court in support of this question is presented for review by the record.

6. We can see no error in the rulings allowing in evidence the 38-caliber pistol found near the body of the deceased, and the cartridge shells (five loaded and one unloaded) taken therefrom.

7. The trial court instructed the jury on the subject of circumstantial evidence in the language used in an instruction approved in *People* v. *Morrow,* 60 Cal. 142, and again in *People* v. *Urquidas,* 96 Cal. 239, [31 Pac. 52]. The only portion of this instruction as to which there can be any criticism is the following: ''There is nothing in the nature of circum-

stantial evidence that renders it any less reliable than other classes of evidence. A man may as well swear falsely to an absolute knowledge of the facts as to a number of facts from which, if true, the facts on which the guilt or innocence depends must inevitably follow.'' This is more in the nature of argument than a declaration of law, and might better have been omitted from the instruction in view of what is said in *People* v. *Vereneseneckockockhoff,* 129 Cal. 497, [58 Pac. 156, 52 Pac. 111] ; *People* v. *O'Brien,* 130 Cal. 8, [62 Pac. 297], and *People* v. *Botkin,* 132 Cal. 231, [84 Am. St. Rep. 39, 64 Pac. 286]. But, as was said in *People* v. *Wilder,* 134 Cal. 182, [66 Pac. 228], where a similar instruction was given, these cases do not go ''to the length of holding such an instruction reversible error.'' It was further said in the case last cited, ''It may be said that as to this instruction containing a declaration of law, there may be grave doubt, but as to the statements there contained not being prejudicially erroneous there is no doubt.'' And so here. We see no force in the claim that under the circumstances of this case the instruction ''in effect and inferentially tells the jury to disregard the testimony of the defendant.''

8. An affidavit was filed on the motion for new trial, in which it was substantially charged that one of the jurors was asleep during a ''great portion'' of the time that one Warren, a witness for the prosecution, was giving his testimony, which was in the early part of the trial. It stated facts which produced the impression upon the affiant, one of the attorneys for the appellant, that the juror was asleep, so much so that finally he called the attention of the judge thereto, ''at about which time the said juror appeared to wake up.'' An affidavit was filed by the juror, declaring in positive terms that he was never asleep at any time during the giving of testimony, and that he heard all of the testimony in the action, and that ''any statement to the contrary is wholly and absolutely false and untrue.'' We are satisfied that, notwithstanding the remarks of the court shown by the record, we would not be warranted in holding that in denying the motion for a new trial in so far as this ground was concerned, the trial court did not accept as true the statements contained in the juror's affidavit. There was a conflict of evidence on the question, and the ruling of the trial court is conclusive on us. It may be remarked that a reading of the testimony given by

the witness Warren shows nothing therein of any value to appellant, but that it is, in fact, of such a nature as to warrant an assumption that it might have been better for the appellant if the juror had not heard it. The record fails to show that appellant's counsel made any objection based on this matter until after conviction.

An examination of the whole record discloses nothing warranting a reversal.

The judgment and order denying a new trial are affirmed.

Melvin, J., Shaw, J., Lorigan, J., and Lawlor, J., concurred.

Sloss, J., concurred in the judgment.

Rehearing denied.