[Civ. No. 5113.   Third Appellate District.—January 26, 1935.]

G. CALLEGARI, Respondent, v. ARMAND MAURER, Appellant.

Neumiller & Ditz and Robert L. Beardslee for Appellant.

Gumpert & Mazzera for Respondent.

PULLEN, P. J.—This is an appeal from a judgment upon a verdict by a jury for personal injuries sustained by plaintiff.

Defendant by mistake had left the public highway and turned into a private driveway. In his efforts to turn around, his heavy car became imbedded in the mud. Several men nearby came to his assistance. Among these men was plaintiff, who took a position at the side of the car and applied his strength toward pushing the car forward. Defendant was in the driver's seat, and as he applied the power the car shot forward so suddenly that plaintiff slipped and was thrown to the ground and the rear wheel passed over his feet, causing the injury here complained of.

Inasmuch as the principal ground urged for reversal is the refusal of the trial court to grant a continuance, we will recite in some detail the steps preceding the motion.

An amended complaint was filed and served November 10, 1932, and an amended answer interposed November 26, 1932.

The cause was set for trial for December 28, 1932, but because the court was then otherwise engaged, this action was, by the order of the presiding judge, reset for January 17, 1933.

We may assume defendant was not present on the day set for trial, for on the following day, December 29th, his counsel wrote to him in Los Angeles, and sent a copy thereof to his Stockton office informing him that the case had been continued to January 17th, and stated it was imperative that he see them as soon as possible in order that they might discuss the facts of the accident and prepare his defense.

Apparently no response was made to this request, and on January 14th, his counsel telegraphed him in San Diego as to the date of trial, and again stated it was absolutely imperative that he be present and testify. In order that his attorneys might be sure that this message was received by appellant, they requested advice from the telegraph company and received a message from the manager of the Western Union Telegraph Company in San Diego that the message was personally delivered to appellant on the day sent, i. e., January 14th.

On the same day appellant's attorneys again wrote him at San Diego, transmitting the same by registered mail, wherein he was again notified of the date of trial, reciting the various communications previously sent him, and again informed him that his presence was absolutely necessary at the trial. This registered letter was received January 15th and signed for by an agent of the addressee in San Diego.

On Saturday, January 14th, appellant called Mr. Neumiller one of his attorneys, on the long distance telephone from San Diego and had some conversation with him. Just what was said we do not know except appellant stated he had some business to transact in San Diego and it would be inconvenient to return to Stockton for the trial and asked Mr. Neumiller to obtain a continuance if possible, upon the ground that he had some unfinished business to attend to, but also stated that if a continuance was refused he would leave San Diego and arrive in Stockton the morning of the trial. Counsel for plaintiff refused to consent to a continuance and appellant was so notified by telegraph on Sunday, January 15th. The next word Mr. Neumiller received was a telephone message received about 5:30 P. M. Monday

afternoon, the day before the trial, from the office of the Columbia Casualty Company in San Francisco, stating that office had received a wire from their San Diego representative that appellant was confined to his bed with influenza and that Dr. Russell, a physician in San Diego, would not permit him to make the trip. On the morning of the trial counsel received the following telegram from the Columbia Casualty Company in San Francisco: "Received wire San Diego representative late Monday reading as follows: A. F. Maurer just advised he is confined to bed with influenza. Dr. Russell will not permit trip. Too late for affidavit. Columbia Casualty Co."

Upon the calling of the cause for trial Mr. Neumiller requested a continuance and in support thereof submitted an affidavit by himself embodying the foregoing information, and also argued the matter ably and at considerable length. The motion was refused, however, and a jury impaneled and the cause tried. Witnesses were called upon behalf of plaintiff and one witness testified upon behalf of appellant, Dr. Sanderson, a specialist in orthopedics.

It is of course elementary that an application for a continuance is addressed to the sound discretion of the trial court, and action thereon will not be disturbed unless an abuse of such discretion clearly appears. In this case we cannot find such an abuse of discretion.

Strictly speaking, there was nothing before the court upon which it could act. It had before it a series of letters and telegrams from the attorneys of appellant addressed to appellant, urging upon him in most forceful language the necessity of his presence at and before the trial. The court also had before it the fact appellant was not present upon the day previously set for trial, and also the telephonic request from appellant to his attorney stating he was otherwise engaged in San Diego, and requesting a continuance if possible. This was the only indication counsel had received from appellant that he had received or intended to comply with their requests that he return to Stockton. They had received no reply to any of their communications addressed to appellant from December 29th to January 14th. Then after receiving all of these letters and telegrams from his attorneys appellant failed to communicate with them as to the fact of his illness, and apparently notified some repre-

sentative of an indemnity company in San Diego, who notified his company in San Francisco, who in turn notified Mr. Neumiller in Stockton. It was upon that information that appellant asked the court to grant a continuance. Not even the name of an individual was affixed to the telegram from the indemnity company, but merely "Columbia Casualty Co."

It is to be recalled, too, that appellant was not a man unacquainted with the methods of quick communication. He was the representative of a large celery company, engaged in the production and marketing of celery, and was then in San Diego to purchase celery to cover their commitments and we may well assume he was familiar with and frequently used telegrams for communication in his business affairs. If the court had had before it telegrams directly from appellant or from his physician stating the fact of illness, a different situation would be here presented. The orderly and prompt dispatch of the large volume of litigation that now concerns the courts requires that cases must be disposed of upon the days set aside for them, unless for good cause shown. Here there was nothing before the court upon which it could act.

Appellant was able, physically, to communicate with a representative of an indemnity company in San Diego some time Monday afternoon, informing the representative he was confined to his bed. It is obvious that if appellant had been as concerned in assisting the court and informing his attorneys as he was in protecting himself with his insurance carrier, he could then have wired the necessary information to the court or counsel. Even a telegraphic report by the attending physician on Monday at 10:30, when the first visited his patient and advised him he would not be able to make the trip, would have put this matter in a different light. In other words, the trial court had no information except a telegram from an impersonal corporation, "Columbia Casualty Co.", not apparently sanctioned by any individual of authority, and an affidavit of Mr. Neumiller based upon hearsay statements as to the reason of appellant's failure to appear. We must remember that the good faith of Mr. Neumiller is not on trial, for he apparently did everything that could be done for his client, but rather the evasive and dilatory tactics of appellant.

Many authorities are cited by counsel to the effect that a litigant is entitled to be present at his trial if possible, but each case is governed by its particular set of facts. Appellant relies strongly upon the cases of *Betts Spring Co.* v. *Jardine Machinery Co.,* 23 Cal. App. 705 [139 Pac. 657] ; *Pacific Gas & Electric Co.* v. *Taylor,* 52 Cal. App. 307 [198 Pac. 651] ; *Carl* v. *Thomas,* 116 Cal. App. 294 [2 Pac. (2d) 872].

In the case of *Betts Spring Co.* v. *Jardine Machinery Co., supra,* it appeared by affidavit of the attorney that his client had been seriously ill, and three months prior to the setting of the case for trial had gone to Scotland and would return in two months, and that he was the only witness to prove matters and things in his own defense. The court also there remarked there was no intimation of bad faith.

In the case of *Pacific Gas & Electric Co.* v. *Taylor, supra,* defendant was not present at the trial. It appeared by affidavit of his attorney, however, that defendant was seriously ill in Boston, where he had gone prior to the setting of the cause for trial, that defendant alone knew the whereabouts of the witnesses, and it was absolutely necessary for appellant to accompany witnesses who were to appraise the property, it being an action in condemnation. The illness of appellant was not questioned. The court there said: "Moreover the rule is that, where such showing is made without any objection to the form in which it appears it should be considered as though it were competent, and legitimate probative force should be accorded to it. In this connection we must remember that there was no controversy in the court below as to Taylor's illness, nor any objection made to the form of the affidavit or the failure to produce a physician's certificate."

In the case at bar not only was objection made as to the character of the evidence, and the good faith of appellant, but also as to the lack of a certificate by a physician.

In the case of *Carl* v. *Thomas, supra,* the affidavits showed that through the failure of the mail service, appellant had received no notice of date of trial, and was then at sea, he being a member of the United States Coast Guard.

We believe sufficient has been said to justify the ruling of the trial court and deem it unnecessary to further discuss this point.

■ Appellant next urges the court erred in refusing to grant a new trial on various grounds, among others being abuse of discretion and errors in law occurring at the trial.

In the affidavits submitted on the question of illness on the motion for new trial, is one by Dr. Russell and one by Dr. Cooper, both of whom attended him and certified he was suffering from influenza. Such showing could not supplement or rectify the insufficient showing made on the morning of the trial, so as to make the court's denial of the original motion for a continuance erroneous. No showing is made by appellant that he was unable to communicate with counsel, nor as to any facts to which he would testify, or even that he was a necessary witness or would testify if the case had been continued or a new trial granted, nor any necessity for his attendance. (*Ross* v. *Thirlwall*, 101 Cal. App. 411 [281 Pac. 714].)

■ Appellant also claims the court erred in refusing to grant a new trial on the ground that a juror had been guilty of misconduct. It was claimed that a juror fell asleep during the course of the trial. First, the affidavit of the juror denies he fell asleep, although he admits closing his eyes while listening to the testimony. (*People* v. *Ung Sing*, 171 Cal. 83 [151 Pac. 1145].) However, the affidavit is insufficient, as it does not show that any material testimony was not heard by the juror; in fact, the record shows that the questions and answers were repeated after the court spoke to the juror.

"The fact that a juror falls asleep during the trial is not ground for disturbing the verdict if it does not appear that his sleep was for such a length of time or at such a stage of the trial as to affect his ability fairly to consider the case." (Am. & Eng. Ency. of Law (2d), vol. 17, p. 1247.)

■ As to the alleged misconduct of counsel for plaintiff in asking a medical witness if he did not testify for Mr. Neumiller on behalf of the defense in all his personal injury actions, while not to be commended, is not such misconduct as to justify a new trial. ■ Likewise certain errors pointed out in an instruction given at the request of plaintiff seem to be removed when the instruction is considered as a whole, but even if, as counsel so earnestly contend, it may be construed as an instruction upon a question

of fact, nevertheless its giving could not justify a reversal of the judgment.

The second instruction is criticised for using the words "responsible for an injury occasioned by another" instead of stating "proximately caused by another". We do not believe the jury was misled thereby.

For the reasons stated the judgment is affirmed.

Thompson, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 25, 1935.