[Crim. No. 604. Department One.—September 17, 1900.]

130 1
136 311

## THE PEOPLE, Respondent, v. JAMES F. O'BRIEN, Jr., Appellant.

CRIMINAL LAW—RAPE— PREVENTING RESISTANCE— INFORMATION — CERTAINTY—CONJUNCTIVE AVERMENT.—An information for rape charging that the prosecutrix was prevented from resisting the act "by certain intoxicating. narcotic, and anaesthetic substance," administered to her by and with the privity of the defendant, is not demurrable for uncertainty by reason of the conjunctive form of the averment, contrary to the disjunctive enumeration in the statute; though it may be, in such cases, that a disjunctive allegation is permissible.

ID.—UNCONSCIOUSNESS OF PROSECUTRIX—CREDIBILITY—PROVINCE OF JURY. The credibility of the testimony of the prosecutrix that she was in a state of unconsciousness before and when the act of sexual intercourse was committed was for the jury to determine, notwithstanding the testimony of other witnesses that she did not appear to be unconscious when she was seen riding with the defendant, and other evidence tending to impeach her character for chastity.

ID.—SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT.—Where there was evidence that the defendant repeatedly administered intoxicating liquor to the prosecutrix, and assumed to drive her home thereafter in the evening, and that after dark, about a mile from the starting place, she was found by witnesses lying on the ground apparently insensible, and was helped into the wagon at the defendant's request, and was taken home in an unconscious

state and it appeared that some one had had intercourse with her, and there was other evidence pointing to the defendant as the guilty·party, the verdict of guilty cannot be disturbed upon appeal for insufficiency of the evidence to support it.

ID.—EVIDENCE—LOADED PISTOL TAKEN FROM DEFENDANT.—Evidence is not admissible to show that several days after the alleged offense a loaded pistol was taken from the defendant by the relatives of the prosecutrix; nor is such pistol admissible in evidence as an exhibit.

ID.—PREVIOUS CHASTITY OF PROSECUTRIX—EVIDENCE IN CHIEF—INFERENCE—REBUTTAL.—It is not admissible for the prosecutrix to testify upon her examination in chief that prior to the occasion of the alleged offense she had never had sexual intercourse with anyone. The previous chastity of the prosecutrix should be inferred by the jury in the absence of evidence to the contrary, and can only be proved by way of rebuttal of attacking evidence.

ID.—INSTRUCTION UPON PRESUMPTION OF CHASTITY—PROVINCE OF JURY—INFERENCE—PRESUMPTION OF INNOCENCE.—It is error to instruct the jury, upon a prosecution for rape, that "the law presumes a woman to be chaste until the contrary is shown." There may be an inference of previous chastity, and the jury should infer it in the absence of evidence; but the jury is the exclusive judge of the weight and validity of the inference. But there can be no legal presumption of chastity against the presumption of innocence, which must prevail until guilt is proved beyond a reasonable doubt.

ID.—IMPROPER BASIS OF INSTRUCTION—LANGUAGE OMITTED FROM PUBLISHED OPINION—PRESUMPTION.—An instruction to the effect that the jury may find on the presumption of chastity against the declarations of any number of witnesses that did not produce conviction in their minds is improperly based on the supposed authority of language used in an opinion, which was omitted in the final publication thereof. It must be presumed that the omission was intentional.

ID.—INSTRUCTION UPON CIRCUMSTANTIAL EVIDENCE—"PROBABILITIES."—It is error to instruct the jury on the subject of circumstantial evidence that "when direct evidence cannot be produced minds will form their judgment on circumstances, and act on the probabilities of the case." Such instruction implies that the jury may act on less than convincing evidence or without the "moral certainty" required by law.

ID.—INSTRUCTION COMPARING WEIGHT OF CIRCUMSTANTIAL AND DIRECT EVIDENCE—MATTER OF FACT.—An instruction relating to the comparative weight or relative value of circumstantial evidence, and the direct evidence of eyewitnesses, improperly charges as to a matter of fact in violation of section 19 of article VI of the constitution. An instruction that eyewitnesses may. lie, though

true, is not upon a matter of law, but upon a matter of fact for the consideration of the jury, and carries with it an improper implication in favor of other kinds of evidence.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial.    John Ellsworth, Judge.

The facts are stated in the opinion.

Frank McGowan, A. A. Moore, Jr., and T. F. Garrity, for Appellant.

Tirey L. Ford, Attorney General, and C. N. Post, Assistant Attorney General, for Respondent.

SMITH, C.—The defendant was convicted of rape.    The appeal is from the judgment and from an order denying a new trial.    The points urged for reversal are, that the information was insufficient to sustain the judgment; that the verdict was contrary to the evidence; and that there were errors in the instructions and in the admission of evidence.

The offense charged, as alleged in the information, and as defined in the instructions, consisted in the defendant's having sexual intercourse with the prosecutrix, "who (it is alleged) was . . . . prevented from resisting said act . . . . by certain intoxicating, narcotic, and anaesthetic substance administered to her by and with the privity of" defendant.

The information was demurred to on the ground of uncertainty—the point of the objection being that the substance administered to the prosecutrix was alleged to be "at once intoxicating, narcotic, and anaesthetic," and that the particular kind of substance is not named.    But the objection, I think, is untenable.    It is well settled that "where the statute enumerates several acts disjunctively, which separately or together shall constitute the offense, the indictment, if it charges more than one of them, which it may do, and that, too, in the same count, should do so in the conjunctive" (*People v. Tomlinson,* 35 Cal. 503; *People v. Thompson,* 111 Cal. 242; *People v. Leyshon,* 108 Cal. 440, and cases cited; Wharton's Criminal Pleading and Practice, secs. 162, ·251); and this rule has been ap-

plied to cases where several intents are enumerated in the statute as elements of the offense (*People v. Ah Woo*, 28 Cal. 206; *Angel v. Commonwealth*, 2 Va. Cas. 231); and also to cases like the present, where different means of perpetrating the offense are enumerated.    (*Wingard v . State*, 13 Ga. 396.) Though, in the last case, and in certain other exceptional cases, it may be that a disjunctive allegation is permissible. (Pen. Code, sec. 954; Wharton's Criminal Pleading and Practice, sec. 161, ad fin.)

With regard to the sufficiency of the evidence, the case made by the prosecution was as follows: The prosecutrix was invited by the defendant to enter his father's hotel at Livermore "to have some refreshments"; and there, on his invitation, took a drink of whisky, and afterward another or other drinks either on his invitation or that of others.   Defendant proposed to drive her home, which was some miles in the country, and his offer was accepted.   On their way out of town, between 6 and half after 6 o'clock, they stopped in front of another saloon, where, though already under the influence of liquor, she took another drink on his invitation.   They were passed on the road shortly afterward by two witnesses, one of whom says she was a little bit intoxicated, the other that he could not say whether she was or not.   They were next seen by witnesses after dark, about a mile from Livermore, in front of the house of the Christianas.   She was then out of the wagon, lying on the road, incapable of motion and presumably insensible, and was lifted into the wagon by the witnesses, who had been called out by the defendant for the purpose.   Half a mile or a mile farther on, about a quarter to eight, or perhaps a little earlier, they met the stepmother and uncle of the prosecutrix; and she was then entirely unconscious, and remained so until put to bed. According to her own testimony she remembered nothing, after the second drink at the Livermore Hotel, until 9 or 10 o'clock next day.   Other witnesses testified that she was not unconscious when she left the hotel, but this is not inconsistent with her statement that she did not remember what then occurred. From the condition of her clothing and person, the morning after these occurrences, as described by herself and stepmother, it was evident that some one had had connection with her; and

from a letter of the defendant, and his subsequent conduct and admissions, the jury were justified in finding the defendant to be the person to whom the act was to be attributed.

The most serious question in the case was as to the time of the act—that is, whether it took place before or after the prosecutrix became unconscious, or otherwise incapable of resistance. When she was seen at the Christiana house—which may have been an hour or more after leaving town—she was obviously in a helpless condition. But when she left town—if the witnesses are to be believed—she was at most only slightly intoxicated; and, if the act took place before her powers of resistance were destroyed, it was not a crime. On this point there was no direct evidence except that of the prosecutrix that she was unconscious of the act; and there was evidence introduced for the defendant tending to impeach her character for chastity, and otherwise to cast suspicion on her testimony. But as the credibility of her testimony was for the jury to determine, their finding on this point must be accepted.

There was thus evidence tending to prove each of the elements of the crime; namely, the administering of intoxicating liquor, and the perpetration of the act when she was in a state of unconsciousness or in such condition as to be incapable of resistance; and we are, therefore, not at liberty to disturb the verdict or the order denying a new trial on the ground of insufficiency of the evidence.

The errors relied upon for reversal relate partly to the admission of evidence, partly to the instructions, and will be considered *seriatim*.

1. The prosecution was allowed to prove, over repeated objections of defendant, the taking of a loaded pistol from the defendant at a meeting between him and the prosecutrix and her brother and uncle three or four days after the alleged offense; and the pistol was introduced in evidence—the defendant still objecting—as an exhibit in the case. This evidence was clearly inadmissible, and though it is difficult to imagine how it could have influenced the jury to the prejudice of the defendant, yet they, like the counsel for the prosecution and the court, may have perceived some bearing of the evidence on the case that we are unable to discover, and, in the absence

of knowing what this was, it is difficult to determine affirmatively from the record that the defendant was not prejudiced. (*San Jose Ranch Co. v. San Jose Land etc. Co.*, 126 Cal. 322; *People v. Wong Ah Leong*, 99 Cal. 440; *People v. Yee Fook Din*, 106 Cal. 163.) In the view we take of the case, however, it will be unnecessary to determine this question.

2. On the examination of the prosecutrix in chief she was permitted to testify over the objection of defendant, that prior to the occasion of the alleged offense by defendant she had never had sexual intercourse with anyone. This was error. No doubt—as held in the cases cited by the attorney general—the previous chastity or unchastity of the female alleged to be raped may be a material element for the jury to consider; but—as the court in this case instructed the jury—the previous chastity of the prosecutrix is presumed, and it is inadmissible, in advance of attack, to prove her good character, and still less to prove her innocence of specific acts of incontinence. (*People v. Tyler*, 36 Cal. 526; *People v. Rector*, 19 Wend. 579; *People v. Gay*, 7 N. Y. 378; *Dodd v. Norris*, 3 Camp. 519; *Rex v. Clark*, 2 Stark. 241—a case of rape.) In general such evidence—as it simply affirms what is to be inferred—may not be prejudicial. But in this case evidence was subsequently introduced by defendant tending to prove that prosecutrix had been unchaste, and even tending to prove specific acts of unchastity, which she was not called to rebut.

3. On this state of the record the court instructed the jury that "the law presumes a woman to be chaste until the contrary is shown"; and further instructed them in effect that they might find on this presumption against the declarations of any number of witnesses that did not produce conviction in their minds. The instruction was based on the supposed authority of *People v. Kehoe*, as reported in 55 Pac. Rep. 912, where such language is used. But the passage does not occur in the opinion as reported in 123 Cal. 224,[1] and it must be presumed the omission was intentional. (Code Civ. Proc., sec. 1875.) That there may be an inference of the chastity of a woman by the jury, and that the jury, in the absence of evidence to the contrary, should so infer, must be admitted.

[1] 69 Am. St. Rep. 52.

(Code Civ. Proc., secs. 1958, 1960.) But a presumption, by which in our code is meant a presumption of law, is a different thing. In the former case the jury are the exclusive judges of the weight and validity of the inference; in the latter they are bound by the presumption unless controverted by other evidence. (Code Civ. Proc., sec. 1961.) Whether, in any case, there is a legal presumption—as opposed to an inference—of the previous chastity of a woman, need not be determined; but as against the presumption of the innocence of one accused of crime, there can be no such presumption. "There cannot be two presumptions in a criminal case. The accused is presumed to be innocent until his guilt is established beyond a reasonable doubt." (*People v. Douglass,* 100 Cal. 1, 6; *People v. Strassman,* 112 Cal. 687; *Hunter v. Hunter,* 111 Cal. 261.[2]) Accordingly, in *People v. Krusick,* 93 Cal. 79, a substantially similar instruction was held to be erroneous, and in *People v. Roderigas,* 49 Cal. 11, it is said, referring to the fact of previous chaste character: "It is not a presumption of mere law to be indulged against the counter-presumption of the innocence of the prisoner on trial upon a charge of crime committed." The two cases last cited were, the latter, a prosecution for enticing an unmarried female of previous chaste character to a house of ill-fame; the former for the seduction of such a woman under promise of marriage; and as in both cases the previous chastity of the woman was a substantive element of the crime, it was held necessary in the one case to allege, and in the other to prove, it; in which respect the cause differed from the one at bar. But otherwise the cases are the same in principle.

4. The court, after instructing the jury as to the admissibility of circumstantial or presumptive evidence, further instructed them that: "When direct evidence cannot be produced, minds will form their judgments on circumstances, and act on the probabilities of the case."

The same instruction was given and approved in *People v. Cronin,* 34 Cal. 193; but, on principle, the instruction seems to be clearly erroneous. In its explicit statement it purported merely to state a very common, though not always commendable, tendency of the human mind to act on probabilities and

---

[2] 52 Am. St. Rep. 180.

without satisfactory evidence; but it implied that the jury were at liberty to pursue this course. But the law requires the jury to be satisfied or convinced of the guilt of the accused before convicting, and hence permits them to act only on evidence sufficient to produce belief or conviction, or, as expressed in the code, on "that degree of proof which produces conviction in an unprejudiced mind." (Code Civ. Proc., sec. 1826.) "Probability" is mere "likelihood" or "appearance—i. e., resemblance —of truth" (Webster's Dictionary); and in ordinary language the term implies doubt. (Century Dictionary.) To instruct the jury that they may "act on probabilities" means simply that they may act on less than convincing evidence, or without that "moral certainty" required by the law. (Code Civ. Proc., sec. 1826; *People v. Dilwood*, 94 Cal. 90.)

5. The jury was further instructed as follows: "Though in human judicature, imperfect as it must necessarily be, it sometimes happens that error has been committed from a reliance on circumstantial evidence, yet this species of evidence, in the opinion of all those who are most conversant with the administration of justice, and most skilled in judicial proceedings, is not only proper and necessary, but it is sometimes even more satisfactory than the testimony of a single individual who swears that he has seen a fact committed. (*People v. Cronin, supra.*) Even persons professing to have been eyewitnesses of that to which they may testify may speak falsely."

This instruction is obviously "a . . . . charge to the jury as to the relative value of direct and circumstantial evidence." It therefore comes within the principle of the decision laid down in *People v. Vereneseneckockockhoff*, 129 Cal. 497, lately decided, and must be regarded as in conflict with section 19, article 6, of the constitution. The instruction is, indeed, somewhat different from that commented on in the case cited, and possibly, in some respects, not so objectionable; but it is none the less in conflict with the rule there laid down; which is that "the court cannot argue to the jury the relative importance of evidence, except as that is settled by some rule of law"; and that "the law declares nothing as to the relative probative force" of the two species of evidence. Whether what is said by the court is in fact true or otherwise makes, therefore, no differ-

ence.   In either case it is forbidden by the constitution and therefore erroneous, and, unless it can be seen not to have been prejudicial, is ground for reversal.

In this case it cannot be determined affirmatively from the record that the defendant was not prejudiced, but rather the affirmative seems probable.   The instruction is taken from that of Mr. Justice Park, cited in *People v. Cronin, supra,* and is substantially the same except that, in place of the words "is much more satisfactory," occurring in the original, the words "is sometimes even more satisfactory" are used; and there is added a statement that even eyewitnesses may speak falsely.   The instruction as given is therefore true as a fact—which was not the case with the original; but, like the original, it does not enounce a rule of law, but is merely an instruction as to the value or weight of this species of evidence, and obviously designed to be recommendatory.   So, also, though true in its explicit terms, the instruction seems to imply a caution against being influenced by those cases where error has been committed from a reliance on circumstantial evidence.   But such cases should always be present to the minds of those who are called upon to determine the question of guilt or innocence.   For they stand as warnings, not of any intrinsic weakness in circumstantial evidence, but of the danger of disregarding that fundamental rule of the law—the indispensable guaranty of liberty and of life—that no man can be held guilty until every reasonable hypothesis in favor of his innocence has been negatived.   Ingenious counsel may, indeed, make a bad use of such cases and use them fallaciously as an argument against the weight of circumstantial evidence in general; but this argument is more readily refuted by a consideration of the fact that such mistakes occur also, and perhaps as often, from a reliance on direct testimony; and there is, therefore, neither necessity nor justification for excluding the cases in which such mistakes have occurred from the consideration of the jury, nor in any way belittling their importance.   Nor was there any necessity or justification for instructing the jury that witnesses may lie.   It is, indeed, an unfortunate fact that they often do so.   But this, like other facts, is for the consideration of the jury; and there is no rule of law involved in the proposition.

The only presumption known to the law is that witnesses speak the truth. (Code Civ. Proc., sec. 1847.) In the instruction here involved a single class—namely, eyewitnesses—are singled out for the observation; which carries with it an implication favorable to other kinds of evidence. On the whole, therefore, the instruction was not only erroneous, but prejudicial to the accused.

I therefore advise that the judgment and order denying a new trial be reversed.

Haynes, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are reversed.

Harrison, J., Van Dyke, J., Garoutte, J.