[Civ. No. 11170.   Second Appellate District, Division Two.—February 23, 1937.]

ANNA MURPHY, Respondent, v. MANSELL A. DAVIS, Appellant.

S. Ward Sullivan and Marcus R. Brandler for Appellant.

Rosalind Goodrich Bates for Respondent.

CRAIL, P. J.—This is an appeal from a judgment in favor of the plaintiff in an action for damages for breach of contract to marry.

Viewing the evidence in the light most favorable to the successful party in the trial court, the facts are as follows: Defendant asked plaintiff to marry him, and shortly thereafter plaintiff accepted said promise to marry defendant and gave her promise in return. In the fall of 1934 defendant renewed said promise to marry but postponed the marriage from time to time without fixing a definite date. Plaintiff, in view of the fact that she was engaged to marry defendant, was persuaded to enter into sexual relations with him. Defendant took plaintiff with him as his wife to New Mexico, Colorado, Utah and Arizona, and induced plaintiff to pose as his wife during this trip. Defendant showed plaintiff various pieces of property and discussed buying a home with her in the state of Colorado and purchased a tax deed on said property, after the property had been approved by plaintiff. Plaintiff became pregnant by defendant. Defendant stated to mutual friends that she was carrying his child and that he wished her to give birth to the child. At this time he again promised plaintiff that he would marry her.

Appellant's first contention is that "the trial court committed prejudicial error in permitting respondent to introduce, over the objection of defendant (appellant), the hearsay

and self-serving declarations'' of two witnesses ''as to her intention to marry respondent, not in the presence of the defendant, Mansell A. Davis''. In this regard the record shows the following: Elsa Glomstad, an acquaintance of plaintiff, testified: ''During '35 have you had any conversation with Mrs. Murphy as to whether or not Mr. Davis intended to marry her? Mr. Hess: I object to that as calling for hearsay. The Court: The objection is overruled. A. Yes. . . . Q. I mean did Mrs. Murphy discuss her contemplated marriage with you? A. Yes. Mr. Hess: I object to that and move to strike it out upon the ground it is irrelevant and immaterial and hearsay, a self-serving declaration of the plaintiff not in the presence of the defendant. The Court: The motion is denied. . . . Q. In the spring of '34. What if anything did she say to you? . . . A. I objected to Mr. Davis walking in her room without knocking on the door. Q. You were there when he walked in? A. Yes. Q. What happened then? A. When Ann returned, I sat alone in her room at the time, and when Ann returned I told her I did not like the idea. Then Ann told me, 'It is all right. We are going to get married.' . . . Q. Did you have any conversation about the trip then at all? A. Yes. Q. Anybody else besides you two? A. No. Q. What if anything was the conversation? A. She told me about the trip, the auto camps. Mr. Hess: The same objection. The Court: The same ruling. Mrs. Bates: May we understand that it goes to all this line of question? The Court: The same objection to all of this. All right, what did she say? A. She told me about the auto camp they were going to operate, and I was sure they were married. I asked her several times, 'Aren't you sure you are married?' and she said 'No.' '' Mrs. Clara Smart, a sister of plaintiff, testified as follows: ''Q. By Mrs. Bates: You then, following this, had a conversation with your sister some time later about Mr. Davis? A. Quite often. . . . Q. By Mrs. Bates: Was there anything said about marriage? Mr. Hess: I object on the ground it is not shown to be in the presence of the defendant, irrelevant and immaterial to any issues. The Court: The objection is overruled. I will give you an objection to all this line of questioning, the same objection. A. Not at that time. Q. By Mrs. Bates: At any time did she ever talk to you about her marriage to Mr. Davis? A. She did. Q. When was

that; do you know? A. I don't recall the first time, but lately, the last six months she has quite often talked about marrying Mr. Davis. Q. In the fall of '35, then, is that what you mean by six months? A. I do. Q. What if anything did she tell you then? A. She said he wasn't very kind to her son Jack, and that he had promised to be nicer to Jack. If he kept his promise she would marry him. . . . Q. Did she at any time tell you he had asked her to marry him? A. Yes, sir. Q. When was that? A. A number of times. I have no dates, anything like that. Q. How frequently were you seeing her? A. On an average of once a week."

██ The declarations of the plaintiff, made to third persons, as to her contemplated marriage with the defendant, though not admissible as evidence of the agreement to marry, were admissible, after *prima facie* evidence of the agreement to marry, and of its breach, for the purpose of showing the humiliation of the plaintiff by the breach of promise, as an element of damage to the plaintiff's feelings. (*Reed* v. *Clark*, 47 Cal. 194; *Liebrandt* v. *Sorg*, 133 Cal. 571 [65 Pac. 1098].)

██ Appellant's second contention is that "there is a fatal variance between the alleged contract to marry in respondent's pleadings and the proof", and in this behalf he contends that the complaint alleged that "the defendant promised to marry the plaintiff within a reasonable time", whereas the proof was that defendant promised to marry plaintiff when he got his "affairs straightened out" or when his "lawsuits were terminated". A contract to marry is ordinarily evidenced by several expressions and many circumstances. The record shows that the above expressions were merely two, among many, of defendant's intention to marry the plaintiff. Many of his promises were made without including any statement of the time for performance; and in the absence of such a statement the law will imply that it shall be performed within a reasonable time, depending, of course, upon the circumstances of each particular case. (4 Cal. Jur. 456; 4 R. C. L. 147.) Under the above rule the record contains a plethora of substantial evidence that the defendant promised to marry the plaintiff within a reasonable time, including many circumstances from which an inference to the same effect may be fairly drawn. It is not the province of this court to disturb a finding of

fact as to the terms of the oral contract if there be any substantial evidence to sustain the finding.

■ Appellant's third contention is that "the alleged promise of marriage is against public policy and void because founded upon an illegal consideration". Defendant refers to the fact heretofore stated that plaintiff, in view of the fact that she was engaged to the defendant, was persuaded to enter into sexual relations with him, and cites the early case of *Boigneres* v. *Boulon*, 54 Cal. 146. In the instant case sexual intercourse was not the consideration for the promise but was a privilege obtained after the contract had been entered into. There is substantial evidence at least that the consideration for the promise to marry was plaintiff's promise given in return. This, of course, was a legal and valid consideration. (4 R. C. L. 144, sec. 3.)

■ The defendant's next contention is that "the alleged contract of marriage was unenforceable because of indefiniteness and uncertainty as to the time of performance". The promise was that the defendant was to marry the plaintiff within a reasonable time. Such a promise is not indefinite and uncertain within the purview of the law on contracts

■ Finally, the defendant contends that the court erred in overruling defendant's motion for a new trial. Rulings of the trial court on such motions are within the sound discretion of the trial court and they will never be reversed unless there is an affirmative showing of an abuse of discretion. (*Bonner* v. *Los Angeles Examiner*, 17 Cal. App. (2d) 458 [62 Pac. (2d) 427].) No such showing is made in this case.

Judgment affirmed.

McComb, J., *pro tem.*, concurred.

WOOD, J., Dissenting.—I dissent. In my opinion the record shows an abuse of discretion on the part of the trial court in denying the motion for a new trial. The pregnancy of plaintiff resulted in a miscarriage. Plaintiff testified that sexual relations commenced after mutual promises of marriage were made, but when she became pregnant she mailed a letter to defendant, which in part is as follows: "I shall put it plainly. I am in a familie way with you, as sure as anything. It just dawned on me a week ago. I started checking up on myselv, and you know how I feel. I can't sleep or rest. So please do not keep me waiting to hear from you. I was

deply hurt when I found you had left the Hotel without telling me. I am not imaging thise thing. It is now 3 weeks overtime and you know what that means. I am terbely sorry to have to write you thise, for I see now how every little I mean to you, and I should gladly leave you to Mrs. R. but as the matter stands, I don't know what to do, as I allways have said, when we do something wrong, we will pay the prise. I am paying now. I am forced to beg you to come to me, but our sins have found us out, just when we were getting ready to quit each other." She signed and delivered to defendant a statement containing no reference to a marriage engagement, but containing this language: "In consideration of Ten Dollars and other good and valuable considerations hereby acknowledged I hereby release M. A. Davis from all liability on my being in the family way." Defendant denied that he promised to marry plaintiff. The judgment was entered May 12, 1936. On motion for a new trial defendant presented affidavits from which it appeared that plaintiff was married to one Theis on May 17, 1936. In her counteraffidavit plaintiff admitted this marriage. It was impossible for defendant to present this information during the trial. Plaintiff's prompt marriage to another man immediately following the entry of judgment had an important bearing upon the amount of damages she claims to have suffered. In view of her letter and release of defendant and other conduct of the parties shown in the record the evidence proffered in the affidavit would have a material and important bearing upon the plaintiff's allegation and defendant's denial that there were mutual promises to marry.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 22, 1937.