[L. A. No. 17602. In Bank.—February 18, 1941.]

AMY HARNED, Respondent, v. HARRY W. WATSON, Appellant.

Michael F. Shannon, Thomas A. Wood and Charles W. Wolfe for Appellant.

Thomas B. Sawyer, John E. Glover and Richard H. Cantillon for Respondent.

CURTIS, J.—This is an appeal from a judgment after verdict whereby the jury awarded the plaintiff $2,000 actual damages and $8,000 exemplary damages as the result of the breach of an alleged agreement of the defendant to marry the plaintiff.

Plaintiff, a woman forty-five years of age, first met defendant at a social function in 1935. She had been married but had obtained a decree of divorce many years before and for the past sixteen years had been making her living as a milliner, earning an average of $200 per month in 1935. The defendant, a man seventy years of age, was married at the time of the first few meetings of the parties. The wife died in July, 1936, and the defendant soon began to frequent plaintiff's apartment and to take her to luncheons and various social events. According to plaintiff, the defendant first asked her to marry him and she accepted in November, 1936, although no definite date for the marriage was fixed at that time. As a result of a quarrel there was a break in the relationship in January, 1937, and marriage was not again discussed until June 3d of that year. On that date the engagement was affirmed.

Plaintiff carried on her millinery business at her apartment, and as a result of defendant's presence most of the time, her business fell off rapidly. Her further testimony in this regard was that she expected to marry soon and thus did not attempt to hold her business.

In September, 1937, defendant suggested that she quit her millinery work and that they look for another apartment for her which would be suitable for them both after they were married. An apartment was found and partially furnished by defendant. When the time came to move in, defendant suggested that he move in also. On objection to this by the plaintiff, the defendant assured her that they would be married within a short time and placed his mother's wedding ring on her finger "to seal the bargain". The parties lived together at this apartment from October, 1937,

to September 17, 1938. During this period both parties admitted that they indulged in sexual intercourse.

Although the defendant denied all plaintiff's testimony that he had promised to marry her the record is replete with evidence weakening such denial. He admitted telling her that he loved her; he accompanied her to church and took communion by her side; he introduced her to his daughter and intimate friends; he escorted her to his clubs; he sent presents to his friends with cards bearing her name and his; he wrote letters and poems of endearment; praised her for her sweetness and her beauty; gave her passes to the races on which she was designated as his wife; took her on trips in the company of his friends; and paid many of the expenses for the upkeep of the apartment.

The date of the marriage was discussed many times after the original proposal, but each time the plaintiff was put off with some excuse. At the time of the affirmance of the engagement on June 3, 1937, defendant stated that he had certain affairs to straighten up and that then they would get married. When they moved into the apartment the defendant stated that they would marry as soon as his son, who was expected any day, arrived. The son came and went, but no marriage resulted. After the son's departure plaintiff again tried to get a definite date set for the wedding. The defendant asked for ''ten more days''. It seems he wanted to close a deal with a Mr. Dahlberg. The ten days passed and no marriage. Finally, on September, 17, 1938, plaintiff made a final attempt to fix a wedding date. The reply was ''Well, a little bit more time and my health will be all right.'' There was no evidence that defendant was in ill health at the time and plaintiff just ''couldn't see it''. She ''just couldn't go any further . . . '' The defendant moved out of the apartment and the parties have not been together since that date.

The complaint, as amended, alleges, in part, that at defendant's request, plaintiff promised to marry defendant, though no definite date was set; that she is still ready and willing to marry defendant; that after said promise of marriage, the defendant seduced plaintiff about November 15, 1937, by means of his said promise and plaintiff's reliance thereon; that on June 3, 1937, the offer of marriage was renewed; that from time to time thereafter the marriage date was discussed; that upon plaintiff's demand on Septem-

ber 17, 1938, that defendant marry her he refused to do so.

The jury awarded plaintiff $2,000 actual damages and $8,000 punitive damages.

■ Defendant's first contention is that the promise to marry, if any, was contingent upon the happening of a future event, namely, when his "financial affairs were straightened out"; that there is a total absence of either pleading or proof that such a contingency has occurred; and that therefore the suit should have been dismissed.

In making an award of damages we must assume that the jury found from the evidence that there was an unconditional promise to marry within a reasonable time. Appellant argues that a conditional contract was established, as a matter of law, because nowhere in the record is there any testimony that the contract was unconditional. We cannot agree with appellant. Referring to the first proposal in November, 1936, the plaintiff testified: " . . . he said, 'I have become to feel that I can't do without you'; and asked me, would I marry him." It is clear that from such testimony the jury could find that there was an unconditional contract. Even though there was a break in the relationship in the early part of 1937, this contract apparently was not adversely affected thereby. This is evidenced by the testimony of the plaintiff. Respecting this breach in their prior friendly relations and their subsequent reconciliation, the plaintiff testified: " . . . Mr. Watson said, . . . 'and I wondered if you felt that the engagement of marriage was ever broken or if it is off; is it off?' I said, 'No, Harry, it has never been off, as far as I was concerned.' And he said, 'It had not been with him'; and if I so felt the same as he did, he did not see why we couldn't continue the engagement again." This reaffirmation of their engagement was based upon their original unconditional agreement of marriage. It is true that following the above quoted testimony the defendant's financial affairs were discussed and that certain things should be straightened out before marriage. It is further true that in answer to the question on cross-examination, "But every time he discussed the question of marriage he always made the date of the marriage contingent upon his straightening out of his finances and his other things, did he not?", the plaintiff answered "Yes, he did." However, this was an answer to just one of many questions asked and it was within the province of the jury to decide whether

this one answer was determinative when considered with the rest of the evidence. (*Whitaker* v. *Whitaker*, 137 Cal. App. 396 [30 Pac. (2d) 538]; *Parker* v. *Herndon*, 19 Cal. App. 451 [126 Pac. 183].) It is quite common after a proposal and acceptance to discuss, in a practical way, the existing situations of the parties, financial and otherwise, but such discussion does not necessarily mean that the marriage itself is conditional on the straightening out of such affairs. Whether such proposal is conditional or not is a question for the jury to determine.

That the alleged condition was no more than an excuse is shown by the fact that different reasons for not marrying or setting a date were given by the defendant at different times. Once it would be after certain mortgages were cleared up; another time after his son came out; still another after a certain deal with a Mr. Dahlberg; and finally, when all other excuses had been used, " . . . when I get my health in shape".

.Even if we assume that the promise to marry after the son came out was a condition as to time and not just an excuse, the evidence shows that such condition occurred. The son did come to Los Angeles and apparently objected to the marriage. The contingency upon which this particular promise was made, having occurred, the conditional promise was rendered absolute.

The appellant relies, to some extent, on the case of *Bailey* v. *Brown*, 4 Cal. App. 515 [88 Pac. 518]. Just one quotation from the record of that case, as disclosed in the opinion, is sufficient to demonstrate its inapplicability here. The plaintiff there testified: ''The time agreed upon that we were to be married was after my mother's death.'' There was apparently no dispute as to this and no evidence to the contrary. The mother was still living and the court properly ruled that there was a failure to prove the cause of action alleged.

Under the facts and circumstances above related we are of the opinion that there was sufficient evidence to justify the jury's implied finding that there was an agreement of marriage unfettered by any condition. In this regard the language in the case of *Murphy* v. *Davis*, 19 Cal. App. (2d) 316 [65 Pac. (2d) 917], is particularly pertinent. It is there stated: ''Appellant's second contention is that 'there is a fatal variance between the alleged contract to marry in re-

spondent's pleadings and the proof,' and in this behalf he contends that the complaint alleged that 'the defendant promised to marry the plaintiff within a reasonable time,' whereas the proof was that defendant promised to marry plaintiff when he got his 'affairs straightened out' or when his 'lawsuits were terminated'. A contract to marry is ordinarily evidenced by several expressions and many circumstances. The record shows that the above expressions were merely two, among many, of defendant's intention to marry the plaintiff. Many of his promises were made without including any statement of the time for performance, and in the absence of such a statement the law will imply that it shall be performed within a reasonable time, depending, of course, upon the circumstances of each particular case. 4 Cal. Jur. 456; 4 R. C. L. 147. Under the above rule, the record contains a plethora of substantial evidence that the defendant promised to marry the plaintiff within a reasonable time, including many circumstances from which an inference to the same effect may be fairly drawn. It is not the province of this court to disturb a finding of fact as to the terms of the oral contract if there be any substantial evidence to sustain the finding.''

■ Appellant's second contention is that there was no basis for the award of punitive or exemplary damages. This contention is based on the following propositions: The plaintiff relied only on seduction as a ground for exemplary damages as shown by the complaint and by the instructions given by the court. This being true it was necessary to prove seduction. In order to make such proof the plaintiff had the burden of affirmatively proving her chastity before the illicit intercourse took place. This the plaintiff completely failed to do and, therefore, there was no basis for the award of exemplary damages. In this respect appellant further argues that the plaintiff cannot rely on any presumption of chastity. This latter argument is supported first by the observation that it has been established in *Swett* v. *Gray,* 141 Cal. 83 [74 Pac. 551], that an allegation of chastity, at the time of the act, is an essential element in stating a cause of action for damages for seduction; that presumptions of law need not be averred in a complaint (citing *Johnson* v. *Clark,* 7 Cal. (2d) 529 [61 Pac. (2d) 767] ; *Henke* v. *Eureka Endowment Assn.,* 100 Cal. 429 [34 Pac. 1089] ) ; that therefore there is no presumption of chastity. In further support

of his argument that there is no such presumption and that chastity must be affirmatively proved, appellant refers to the criminal cases of *People* v. *Roderigas,* 49 Cal. 9 , *People* v. *Wallace,* 109 Cal. 611 [42 Pac. 159], and *People* v. *O'Brien,* 130 Cal. 1 [62 Pac. 297] , which he claims so hold.

Although there is authority for the proposition that there is a presumption of chastity in breach of promise cases (see 9 C. J., p. 349, sec. 64), appellant's argument that there is no presumption of chastity where seduction is pleaded and that it must be affirmatively pleaded is well reasoned and convincing. Furthermore, it must be admitted that the criminal seduction cases cited do hold that there is no presumption of chastity which would negative a defendant's constitutional right of a presumption of innocence. Such cases might be distinguished from a civil case in which seduction is pleaded, but we do not deem it necessary to indulge in any discussion of the rather complex field of presumptions. We are of the opinion that there was sufficient affirmative evidence from which the jury might, and apparently did, infer that the plaintiff was chaste at the time she consented to the illicit relationship.

First, the actions of the appellant himself, in relation to the plaintiff, point to a belief on his part that she was in no way a "fallen woman". The friendship of the parties was not a secretive, after dark affair. He attended church and took communion with her; took her on trips with his closest friends and to their homes; sent presents to his friends signed by both parties; invited his friends to the apartment the parties were sharing; and introduced her to members of his family. In turn, appellant's friends, who were professional men and other respected members of the community, treated plaintiff with respect and introduced her to their friends and families. One P. C. Gernert, who considered himself appellant's "dearest and best pal", requested and permitted plaintiff to act as hostess for his young adopted daughter at a Hallowe'en party. Plaintiff had, for years, worked as a milliner and in that capacity served many young business girls. She was permitted to carry on the business in her apartment and her landlady's young daughter was permitted to help her with her work. From the evidence referred to and from a review of the entire record we cannot but conclude that there was sufficient evidence from which the jury might infer chastity. That the jury may so infer

is brought out by the very cases relied on by the appellant for the proposition that there is no presumption of chastity. In *People* v. *O'Brien, supra,* it is stated: "That there may be an inference of chastity of a woman by the jury, and that the jury, in the absence of evidence to the contrary, should so infer, must be admitted." It might be here noted that nowhere in the record is there the slightest hint that plaintiff was of unchaste character. The court in *People* v. *Roderigas, supra,* in commenting on the necessity of affirmatively proving chastity, stated: "Character in this respect is a fact, and one which must be alleged in the indictment, and established by the prosecution in order to (secure) a conviction of the accused. It need *not,* however, be proven by evidence given *directly* upon the point, but may be shown *prima facie,* by presumption from other facts and circumstances attending the transaction; as, for instance, that the unmarried female—the subject of the injury—was at the time residing with her parents, or other relatives, or her guardian, or in some respectable household, or *by proof of other like circumstances consistent with, and the usual concomitants of chaste female character."* (Italics added.)

Appellant further claims that the trial court erred in admitting certain testimony of respondent in regard to her seduction. She was asked the question "Was it his promise that induced you to submit yourself for sexual intercourse?", to which she answered, "Yes". Appellant objected at the time on the ground that the question called for a conclusion and opinion of the witness. The objection was overruled and appellant here claims that such was error on the same ground. The trial court properly overruled the objection. One of the essential elements to be established in the proof of seduction is reliance on the promise of marriage. The state of mind therefore is a fact to be proved, the best evidence of which is the testimony of the victim herself, such fact being peculiarly within her own knowledge. Such testimony was apparently permitted in the case of *People* v. *Votaw,* 38 Cal. App. 714 [177 Pac. 485]. As to fraud and reliance generally such testimony was held proper in the cases of *Fagan* v. *Lentz,* 156 Cal. 681 [105 Pac. 951, 20 Ann. Cas. 221], and *Luitweiler Pumping Engine Co.* v. *Ukiah Water & Implement Co.,* 16 Cal. App. 198 [116 Pac. 707, 712]. That a party might testify directly to his own intent or motive has been well established by the cases of *Fleet* v.

*Tichenor,* 156 Cal. 343 [104 Pac. 458, 34 L. R. A. (N. S.) 323], and *People* v. *Moore,* 48 Cal. App. 245 [191 Pac. 980].

The trial court first instructed the jury that there was no evidence to sustain the allegation of seduction and that it could not award punitive damages. The court later told the jury to disregard such instruction. The appellant now complains that the giving and withdrawal of such instruction so confused the jury that it was prejudicial error sufficient to compel a reversal. We have already determined that there was sufficient evidence to uphold the award of punitive damages as a result of seduction and we do not feel that any prejudicial error was committed.

We are not unmindful of the fact that this is not the usual breach of promise and seduction case, in which advantage was taken of a young and innocent girl. The plaintiff was a middle-aged woman who should have had sufficient worldly wisdom to guard against the situation in which she now finds herself. However, it cannot be denied that, on the faith of the promises of the defendant, she has suffered injury. She has given up her millinery business which was her only means of livelihood, and she will undoubtedly have difficulty in regaining it. Her relationship with the defendant was apparently well known, so that she must now suffer the silent or outspoken criticism of her friends and the community in which she must live. Such actions on the part of the plaintiff, in permitting the situation to exist, are not to be condoned, but when such acts occurred, actions for damages for breach of promise and seduction were permissible under the laws of this state. Evidence was sufficient to warrant the verdict of the jury; therefore, such verdict and the resultant judgment must be affirmed.

The judgment is affirmed.

Shenk, J., Traynor, J., and Carter, J., concurred.

A petition for a rehearing was denied March 17, 1941.