[Crim. No. 13712. In Bank. Jan. 27, 1970.]

In re TED BUSHMAN on Habeas Corpus.

**COUNSEL**

John M. Sink for Petitioner.

A. L. Wirin, Fred Okrand and Laurence R. Sperber as Amici Curiae on behalf of Petitioner.

David D. Minier, District Attorney, and A. Barry Cappello, Chief Deputy District Attorney, for Respondent.

**OPINION**

**TRAYNOR, C. J.**—A jury found petitioner guilty of disturbing the peace in violation of Penal Code section 415.[1] The trial court imposed the maximum sentence (90 days in jail and a $200 fine), but suspended execution of the sentence and granted probation. The conviction was affirmed by the appellate department of the superior court, which denied certification to the Court of Appeal. The United States Supreme Court denied certiorari. (395 U.S. 944 (1969).)Petitioner now seeks habeas corpus in this court.

Petitioner is a practicing attorney and a licensed private pilot. On numer-

---

[1]Penal Code section 415 provides: "Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood or person, by loud or unusual noise, or by tumultuous or offensive conduct, or threatening, traducing, quarreling, challenging to fight, or fighting, or who, on the public streets of any unincorporated town, or upon the public highways in such unincorporated town, run any horse-race, either for a wager or for amusement, or fire any gun or pistol in such unincorporated town, or use any vulgar, profane or indecent language within the presence or hearing of women or children, in a loud and boisterous manner, is guilty of a misdemeanor, . . ."

ous occasions before the incident leading to his conviction, petitioner appeared before the Santa Maria Public Airport District Board of Directors in his capacity as an attorney and as a private pilot. During the year preceding the incident, petitioner complained to the board about the condition of the runways at the airport. He alleged that the runways were cracked, pitted, weed-grown, and littered with glass and metal debris. He was particularly concerned with significant amounts of loose gravel on the runways that were causing damage to his and others' aircraft. Petitioner's frequent complaints to the board apparently went unanswered. He testified that his relations with the members of the board had become so volatile that his mere presence at board meetings provoked anger and resentment.

The day before a regular board meeting, petitioner went to the airport's main runway with a broom, bucket, and dustpan. He made five parallel sweeps across the width of the runway, collecting approximately 10 pounds of gravel and metal debris. On the morning of the following day, July 6, 1967, Donald M. Prentice, president of the airport board, convened a meeting of the full five-member board. The roll call was taken and the first three items on the agenda were considered. As the board reached the fourth item, petitioner entered the room, carrying a bucket of gravel in both hands at chest level. Without speaking he walked to the desk where Prentice was presiding. According to the People's evidence petitioner deliberately dumped the contents of the bucket over Prentice's desk and papers. Prentice called petitioner a "dirty low-down son of a bitch" and hit him. Members of the board's staff restrained Prentice, and petitioner walked from the room. According to petitioner's testimony he intended to set the bucket of debris upright on Prentice's desk to demonstrate the condition of the runways to the board, the public, and the press, but accidentally spilled the contents of the bucket when Prentice hit him.

Petitioner was charged by complaint with violating Penal Code section 415, in that he "did willfully, unlawfully and maliciously disturb the peace and quiet of Donald M. Prentice and the Board of Directors of the Santa Maria Public Airport District by tumultuous and offensive conduct."[2]

In this proceeding petitioner attacks his conviction on the grounds that Penal Code section 415 is unconstitutional and that errors at the trial require reversal. We have concluded that the writ should be granted.

■ Petitioner contends that section 415 is so vague, it provides no ascertainable standard of guilt and thus denies due process of law. He also

---

[2]Petitioner was also charged with violating Penal Code section 403 (disturbing a meeting or assembly). The trial court sustained a demurrer to the charge on the grounds that section 403 is unconstitutional.

contends that the section is overbroad and makes punishable conduct protected by the First Amendment.

Section 415 is not unconstitutionally vague and overbroad. It has a commonly understood meaning that not only affords adequate notice of the type of conduct that is proscribed, but also precludes its application to conduct protected by the First Amendment. ■ The part of the section under which petitioner was convicted provides: "Every person who maliciously and willfully disturbs the peace or quiet of any . . . person . . . by tumultuous or offensive conduct . . . is guilty of a misdemeanor." The terms "disturb the peace" and "breach of the peace," which are substantially synonymous, have long been understood to mean disruption of public order by acts that are themselves violent or that tend to incite others to violence. Thus, one may be guilty of disturbing the peace within that part of section 415 if he engages in "tumultuous" conduct, i.e., violent conduct that wilfuly and maliciously endangers public safety or order. He may also be guilty of disturbing the peace through "offensive" conduct if by his actions he wilfully and maliciously incites others to violence or engages in conduct likely to incite others to violence. (*People* v. *Cohen* (1969) 1 Cal.App.3d 94, 101 [81 Cal.Rptr. 503].)

The foregoing construction of section 415 assures that conduct protected by the First Amendment's guarantee of freedom of speech is not made criminal. Unlike the city ordinance considered by the United States Supreme Court in *Terminiello* v. *Chicago* (1948) 337 U.S. 1 [93 L.Ed. 1131, 69 S.Ct. 894], that permitted conviction if one's speech "stirred people to anger, invited public dispute, or brought about a condition of unrest" (337 U.S. 1, 5 [93 L.Ed. 1131, 1135, 69 S.Ct. 894]), or the statute considered by that court in *Cantwell* v. *Connecticut* (1939) 310 U.S. 296 [84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352], that permitted conviction although there was no clear and present danger to public peace and order, that part of Penal Code section 415 in question here makes punishable only wilful and malicious conduct that is violent and endangers public safety and order or that creates a clear and present danger that others will engage in violence of that nature.

Petitioner contends that his conduct was a legitimate means of conveying his grievances to the airport directors. He urges that his actions were a form of "symbolic speech" protected by the First Amendment. ■ Not all acts intended to express ideas or convey information are protected forms of free speech. (*United States* v. *O'Brien* (1968) 391 U.S. 367, 376 [20 L.Ed.2d 672, 679, 88 S.Ct. 1673]; see also *Adderley* v. *Florida* (1966) 385 U.S. 39, 47-48 [17 L.Ed.2d 149, 155-156, 87 S.Ct. 242].) When public order and safety are threatened by violence, states may restrict or punish the conduct that creates such threat. (*Cantwell* v. *Connecticut*,

*supra*, 310 U.S. 296, 307-311 [84 L.Ed. 1213, 1219-1221, 60 S.Ct. 900, 128 A.L.R. 1352].) Inasmuch as that part of section 415 considered here does not make criminal any nonviolent act unless the act incites or threatens to incite others to violence, it is unnecessary to decide whether petitioner's act was "communication," for the test is the same whether acts are intended to communicate ideas or not.

■ The trial court, however, failed to instruct the jury in accordance with the foregoing construction of section 415, which preserves its constitutionality. The court advised the jury that " 'offensive' means giving offense; causing displeasure or resentment; insulting." The instruction makes criminal, conduct that is protected by the First Amendment. Moreover, the jury might have convicted petitioner on the basis of such protected conduct without reaching the question whether the spilling of the gravel was intentional or accidental. Thus, petitioner testified that his mere presence before the airport board of directors caused anger and resentment. Accordingly, the jury might have found petitioner guilty of "offensive conduct" if he made any appearance calculated to vex or annoy the board of directors, regardless of whether petitioner's conduct was violent or incited others to violence. Moreover, the appellate department of the superior court, in affirming petitioner's conviction, held that his appearance with the intent to annoy the board "in and of itself constituted a disturbance of the peace." Under these circumstances, petitioner has discharged his burden on habeas corpus of proving that his conviction was based on constitutionally protected conduct. (*In re Klor* (1966) 64 Cal.2d 816, 821-822 [51 Cal.Rptr. 903, 415 P.2d 791].)

In view of our conclusion that the conviction must be set aside because the jury was improperly instructed, it is not necessary to consider all of petitioner's additional assignments of error. We consider some of these alleged errors, however, which may occur again on retrial, for the guidance of the trial court. (Code Civ. Proc., § 53.)

■ Petitioner contends that the trial court erred in not instructing the jury that to find him guilty, they must find that his conduct was both tumultuous and offensive.

The complaint charged petitioner with "tumultuous and offensive conduct." In instructing the jury, the court said: "The defendant is charged in the Complaint to have maliciously disturbed the peace by tumultuous and offensive conduct. He may be found guilty of maliciously disturbing the peace if you find that he did in fact maliciously disturb that peace by tumultuous conduct or by offensive conduct alone. It is not necessary that you agree to the charge of both tumultuous and offensive conduct." That instruction was proper.

When a statute such as Penal Code section 415 lists several acts in the disjunctive, any one of which constitutes an offense, the complaint, in alleging more than one of such acts, should do so in the conjunctive to avoid uncertainty. (*People* v. *Ah Woo* (1865) 28 Cal. 205, 212; *People* v. *O'Brien* (1900) 130 Cal. 1, 3-4 [62 P. 297].) Merely because the complaint is phrased in the conjunctive, however, does not prevent a trier of fact from convicting a defendant if the evidence proves only one of the alleged acts. (*People* v. *McClennegen* (1925) 195 Cal. 445, 452 [234 P. 91].) The jury could have found petitioner guilty of "tumultuous conduct" if the evidence proved that his conduct was maliciously and wilfully violent, endangering public safety and order. They might also have found him guilty of "offensive conduct" if his malicious and wilful actions incited others to violence, although his own conduct was not in itself violent.

Petitioner objected to the introduction into evidence of a letter to him from the Federal Aviation Administration, asserting that it was hearsay. The letter, dated January 23, 1968, acknowledges the receipt of two previous letters from petitioner, the earliest dated August 8, 1967 (one month after the alleged breach of the peace). The letter further stated that after receiving the two letters from petitioner the agency made inspections of the runways. They concluded on the basis of these inspections that the airport was being properly maintained. The letter did not refer to the condition of the runways on or before July 6, 1967.

The People contend that the evidence was not hearsay, on the ground that it was not introduced to prove the truth of the matters asserted therein, but to impeach petitioner's previous testimony. The contention is without merit. Petitioner testified that he sent numerous letters to many agencies about the condition of the runways, and that he received different replies. Although some agencies agreed with him, petitioner admitted that others were either unconcerned with the problem or disagreed with him entirely. One letter disagreeing with petitioner on the condition of the runways cannot be used to impeach his testimony since it is not inconsistent with it. Petitioner did not testify that the F.A.A. letter said anything other than what it did say.

The letter of January 23, 1968, from the F.A.A. was hearsay and did not come within any exceptions to the hearsay rule. That letter, therefore, should have been excluded.

Finally, the trial court suspended execution of petitioner's sentence and ordered that he be placed on two years' probation. In addition to the usual terms and conditions of probation, the court imposed five special

conditions.[3] One condition required petitioner to seek psychiatric treatment at his own expense with a qualified psychiatrist approved by the court, and to continue the treatment as required by the doctor and approved by the probation department and the court. Petitioner contends that imposition of this condition is beyond the court's jurisdiction. We agree.

When granting probation, courts have broad discretion to impose restrictive conditions to foster rehabilitation and to protect public safety. Penal Code section 1203.1 authorizes the court to impose any "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, . . . and specifically for the reformation and rehabilitation of the probationer." If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence. (*In re Osslo* (1958) 51 Cal.2d 371, 377 [334 P.2d 1]; *People* v. *Frank* (1949) 94 Cal.App.2d 740, 741-742 [211 P.2d 350].) In such case he may challenge the legality of any proposed conditions of probation on an appeal from the judgment or on habeas corpus. (*In re Osslo, supra,* at p. 382; *In re Allen* (1969) 71 Cal.2d 388, 389 [78 Cal.Rptr. 207, 455 P.2d 143].) If it is determined that a proposed condition of probation is invalid, the judgment should be vacated and the defendant given an opportunity to accept probation on lawful conditions. If, on the other hand, the defendant accepts probation, he may seek relief from the restraint of any alleged invalid condition of probation on appeal from the order granting probation or on habeas corpus. (*In re Allen, supra,* at p. 389; *In re Osslo, supra,* at pp. 381-382.) Although habeas corpus cannot serve as a substitute for appeal to review a determination of fact made on conflicting evidence (*In re Dixon* (1953) 41 Cal.2d 756, 760 [264 P.2d 513]; *In re Lindley* (1947) 29 Cal.2d 709, 722 [177 P.2d 918]), it may be used to review the validity of a sentence or order of probation that can be corrected without the redetermination of any questions of fact. (*In re McInturff* (1951) 37 Cal.2d 876, 880-881 [236 P.2d 574]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 16-17 [9 Cal. Rptr. 607, 357 P.2d 839].)

A condition of probation imposed pursuant to Penal Code section

---

[3]In addition to the condition of probation in issue, the court required petitioner to make a prompt and sincere apology to the president and members of the airport district board of directors; to reimburse the airport district $100 as payment for costs of cleaning, lost time and photography expenses; to resign as newly elected president of the airport board; and to submit himself to the local bar association for possible disciplinary action. In affirming petitioner's conviction, the appellate department of the superior court struck all conditions except the one in issue and the condition of reimbursement. Petitioner does not contest the latter condition.

1203.1 is invalid if it (1) has no relationship to the crime of which the defendant is convicted, (2) relates to conduct that is not itself criminal, or (3) requires or forbids conduct that is not reasonably related to future criminality. (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290].) There is no evidence to support the trial court's conclusion that petitioner needed psychiatric care. No expert witnesses testified to his mental condition. Neither the prosecution nor the court questioned any witnesses about that condition. Under these circumstances the condition as to psychiatric care had no relationship to the crime of which petitioner was convicted. Furthermore, without any showing that mental instability contributed to that offense, psychiatric care cannot reasonably be related to future criminality.

The writ of habeas corpus is granted, and petitioner is discharged from the custody imposed by the Municipal Court of the Santa Maria Judicial District pursuant to the judgment of May 28, 1968.

Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**BURKE, J.**—I dissent, for in my view petitioner clearly failed to prove that his conviction was based solely upon conduct which the majority hold to be constitutionally protected.

The majority rely exclusively upon *In re Klor,* 64 Cal.2d 816, 822 [51 Cal.Rptr. 903, 415 P.2d 791], wherein this court stated: "We have held that a petitioner who collaterally attacks a conviction based upon a statute containing both valid and invalid portions bears the 'burden of proving that he was not tried and convicted for violating the valid part of the statute.' (*In re Bell* (1942) 19 Cal.2d 488, 504 [122 P.2d 22].)"

In *Klor,* we granted habeas corpus after concluding that "So strong was the evidence tending to establish petitioner's guilt under the erroneous portion of the charge and so weak the evidence which would ground a conviction under the valid portion that we determine that petitioner can discharge his 'burden of proving that he was not . . . convicted for violating the valid part. . . .'"

On the other hand, in *In re Bell,* 19 Cal.2d 488 [122 P.2d 22], cited as controlling in *Klor* we discharged the writ on the ground that "Petitioners in the present case have failed to sustain the burden of proving that they were not tried and convicted for acts of violence *since the transcripts of testimony at their trials reveal evidence of such acts. . . .* Because petitioners have failed to sustain the burden of proving that they were not convicted of the one valid provision of the ordinance prohibiting acts of violence, the writ heretofore issued is discharged and the petitioners are

remanded to the custody of the sheriff of Yuba County." (Italics added; 19 Cal.2d at pp. 504-505.)[1]

The instant case is governed by *Bell*, not by *Klor*. Unlike *Klor*, the evidence supporting petitioner's conviction under the valid portion of Penal Code section 415 was, in a word, overwhelming. The record discloses that petitioner entered the board meeting and thereupon deliberately dumped 10 pounds of gravel and debris on President Prentice's desk, thereby provoking Prentice to lose his temper and to strike petitioner.[2] The majority correctly assert that section 415 may validly be applied to "violent conduct that wilfully and maliciously endangers public safety *or order*" (italics added), as well as to " 'offensive' conduct if by his actions he wilfully and maliciously incites others to violence. . . ." (*Ante*, p. 773.) Petitioner's conduct in disrupting a public meeting and in inciting Prentice to violence, clearly satisfied either standard.

The majority hypothesize that the jury "might" have convicted petitioner on the basis of his mere presence at the meeting. But *Bell* and *Klor* foreclose all such speculation by placing the burden upon *petitioner* to prove the jury's nonreliance upon valid grounds for conviction by establishing the insubstantiality of the evidence supporting those grounds. In *Klor*, that evidence was characterized as "weak." In *Bell*, as in the instant case, the contrary was true. Therefore, in effect, the majority opinion overrules *Bell* and *Klor* and improperly discards their requirement that petitioner bear the burden of proving the invalidity of his conviction.

McComb, J., concurred.

---

[1]Accord, *In re Carlson*, 64 Cal.2d 70, 73-75 [48 Cal.Rptr. 875, 410 P.2d 379]. It should be noted that both the *Bell* case and the instant case involved convictions affirmed by the appellate department of the superior court, without further appeal. Thus, the *Bell* test regarding the burden of proof in habeas corpus proceedings is controlling here.

[2]The *only* evidence to the contrary was petitioner's own testimony that he accidentally spilled the gravel after Prentice swore at him and grabbed his arm. This testimony was repudiated by the other witnesses and by a tape recording establishing that petitioner dumped the gravel *before* Prentice swore at him. The trial court bluntly characterized petitioner's testimony as "perjury," stating that "The jury did not believe the testimony of Mr. Bushman that the dumping of the gravel was an accident."