# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

ARVIN ESPINOZA-MORALES,
   *Defendant-Appellant.*

No. 09-50267

D.C. No.
3:08-CR-01271-
MMA-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted
May 4, 2010—Pasadena, California

Filed September 10, 2010

Before: Betty B. Fletcher and Richard A. Paez,
Circuit Judges, and Donald E. Walter,
District Judge.*

Opinion by Judge Paez;
Dissent by Judge Walter

---

*The Honorable Donald E. Walter, Senior United States District Judge for the Western District of Louisiana, sitting by designation.

13833

## COUNSEL

Doug Keller, Federal Defenders of San Diego, California, for defendant-appellant Arvin Espinoza-Morales.

Amy Dell, Special Assistant United States Attorney, and Shelia Nagarai (argued), Assistant United States Attorney, San Diego, California, for plaintiff-appellee, United States of America.

## OPINION

PAEZ, Circuit Judge:

Arvin Espinoza-Morales appeals the 57-month sentence imposed following his guilty plea to attempted reentry following deportation in violation of 8 U.S.C. § 1326. In particular, Espinoza challenges the district court's application of U.S. Sentencing Guidelines (U.S.S.G.) § 2L1.2(b)(1)(A)(ii), which imposes a 16-level enhancement where a defendant has previously been convicted of a felony "crime of violence." In this appeal, we consider whether Espinoza's prior conviction for

sexual battery under California Penal Code section 243.4(a) or his conviction for penetration with a foreign object under California Penal Code section 289(a)(1) constitutes a crime of violence warranting the § 2L1.2(b)(1)(A)(ii) enhancement. We conclude that they do not, under either the categorical or modified categorical approach, and we accordingly vacate Espinoza's sentence and remand for re-sentencing.

## I.  FACTUAL BACKGROUND

In March 2008, Espinoza, a citizen of Nicaragua, pleaded guilty to one count of attempted reentry after deportation in violation of 8 U.S.C. § 1326. The government urged the court to apply a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) on the grounds that Espinoza had previously been deported after "conviction for a felony that is . . . a crime of violence." The government contended that Espinoza's 1999 convictions for sexual battery under California Penal Code section 243.4(a) and for penetration with a foreign object under California Penal Code section 289(a)(1) —convictions that arose out of a single incident—qualified as crimes of violence within the meaning of the Sentencing Guidelines. Although the government conceded that the sexual battery conviction under section 243.4(a) did not constitute a categorical crime of violence, it argued that the section 289(a)(1) penetration with a foreign object offense categorically constituted a crime of violence. The government also contended that both crimes amounted to crimes of violence under the modified categorical approach. In support of that contention, the government offered (1) the criminal information and abstract of judgment and (2) an unpublished state appellate court decision that summarized the facts of Espinoza's prior offenses. According to the state appeals court opinion, Espinoza had put his victim in a headlock and, while keeping his arm around her neck, tried to kiss her, touched her breast, and rubbed his hand on and inserted his finger inside her vagina.

The district court agreed with the government that Espinoza's prior convictions warranted the 16-level enhancement, concluding that they qualified as crimes of violence "whether you look at [them] under [the] categorical or modified categorical approach."[1] Applying a base offense level of 8, a 3-point reduction for acceptance of responsibility, and the 16-level crime of violence enhancement, the district court calculated an advisory Guidelines sentencing range of 57 to 71 months and sentenced Espinoza within the Guidelines range to 57 months' imprisonment and three years of supervised release.

Espinoza timely appealed. On appeal, Espinoza contends that his prior state convictions do not constitute crimes of violence under either the categorical or modified categorical approach and that his sentence violates his Fifth and Sixth Amendment rights because it was based on judicial fact-finding that he had previously been convicted of a crime of violence.[2]

## II.  STANDARD OF REVIEW

We review de novo whether a prior conviction constitutes a crime of violence under U.S.S.G. § 2L1.2. *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 856 (9th Cir. 2005).

---

[1]The district court did not actually specify whether it found that both convictions, or only one, qualified as crimes of violence. Because the district court was unclear, and because the government had sought the enhancement on the basis of both convictions, we assume that the district court found that both convictions qualified as crimes of violence and accordingly analyze both statutes.

[2]As Espinoza acknowledges, his constitutional argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and our consistent adherence to that Supreme Court precedent, *see, e.g.*, *United States v. Grisel*, 488 F.3d 844, 846 (9th Cir. 2007) (en banc); *United States v. Grajeda*, 581 F.3d 1186, 1197 (9th Cir. 2009). We accordingly reject his constitutional argument without further analysis.

## III.   DISCUSSION

To determine whether Espinoza's prior convictions qualify as "crimes of violence" under U.S.S.G. § 2L1.2,[3] we apply the approach set forth in *Taylor v. United States*, 495 U.S. 575, 602 (1990). *See Grajeda*, 581 F.3d at 1189. Under that approach, we first consider whether a prior offense "is categorically a crime of violence by assessing whether the full range of conduct covered by the statute falls within the meaning of that term." *Id.* (internal quotation marks, alteration, and citation omitted). If the statute of conviction is overbroad—that is, if it punishes some conduct that qualifies as a crime of violence and some conduct that does not—it does not categorically constitute a crime of violence. *See id.* In that case, we must then apply the "modified categorical approach" to determine whether the record of conviction shows that the defendant "was convicted of the elements of the generically defined crime." *Id.* (quoting *United States v. Vidal*, 504 F.3d 1072, 1077 (9th Cir. 2007) (en banc)).

### A.   *Categorical Approach*

On appeal, the government concedes that Espinoza's convictions under California Penal Code sections 243.4(a) and 289(a)(1) do not qualify as crimes of violence under the categorical approach. Although we need not accept this concession on a matter of law, *see United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987), we agree that these crimes do not categorically constitute crimes of violence.

---

[3]The district court applied the 2008 edition of the United States Sentencing Guidelines Manual in calculating Espinoza's advisory Guidelines range, and all references are to that edition unless otherwise indicated. Like the current version, the 2008 version of § 2L1.2(b)(1)(A)(ii) instructs the court to increase a defendant's base offense level by 16 levels "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii).

An offense qualifies as a "crime of violence" under § 2L1.2(b)(1)(A)(ii) if it either (1) " 'has as an element the use, attempted use, or threatened use of physical force against the person of another' under the definition's . . . 'element' prong" or (2) "constitutes one of the crimes listed in the 'enumerated offense' prong of the definition." *Grajeda*, 581 F.3d at 1189-90 (quoting U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii)).[4] We address in turn whether either offense qualifies as a crime of violence under either prong of § 2L1.2's definition, under either the categorical or modified categorical approach. In particular, in applying the enumerated offense prong of § 2L1.2's crime of violence definition, we consider whether Espinoza's convictions could potentially constitute "forcible sex offenses."

### 1.    Sexual Battery under California Penal Code section 243.4(a)

**[1]** At the time of Espinoza's conviction, section 243.4(a) punished "touch[ing] an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, [where] the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse." Cal. Penal Code § 243.4(a) (1999). We have previously held that this statute does not categorically constitute a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A). *United States v. Lopez-Montanez*, 421 F.3d

---

[4]Application note 1(B)(iii) to U.S.S.G. § 2L1.2 provides in full:

"Crime of violence" means any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

926, 929 (9th Cir. 2005). Although the definition of "crime of violence" in force at the time of Espinoza's sentencing differs from that at issue in *Lopez-Montanez*, the government does not contest, and we do not doubt, the ongoing validity of *Lopez-Montanez*'s holding, at least as applied to this case. To explain, we briefly discuss *Lopez-Montanez*'s holding and its applicability here.

### a.   Element Prong

We recognized in *Lopez-Montanez* that, "although [section 243.4(a)] requires that the victim be 'unlawfully restrained,' the restraint need not be physical and can be accomplished by words alone, including words that convey no threat of violence." *Id.* Because a section 243.4(a) offense therefore does not require the "use, attempted use, or threatened use of *physical* force against the person of another," it does not qualify as a crime of violence under the element prong of § 2L1.2's definition. U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii) (emphasis added); *see also United States v. Beltran-Munguia*, 489 F.3d 1042, 1051 (9th Cir. 2007).

### b.   Enumerated Offense Prong

**[2]** In *Lopez-Montanez*, we also held that only offenses involving the use of physical force could constitute "forcible sex offenses" under the enumerated offense prong, and that sexual battery under section 243.4(a) therefore did not qualify as a "forcible sex offense." *Lopez-Montanez*, 421 F.3d at 929-31. To be sure, the 2008 amendments to the § 2L1.2 definition of "crime of violence" may have abrogated this holding. At the time of *Lopez-Montanez*, § 2L1.2 enumerated "forcible sex offenses," with no elaboration, on its list of crimes of violence. *Id.* at 929 (quoting U.S.S.G. § 2L1.2, cmt. n. 1(B)(ii) (2002)). By the time of Espinoza's sentencing in 2009, the Sentencing Commission had amended the definition to include a more detailed description of the "forcible sex offenses" that would constitute crimes of violence. Rather

than simply listing "forcible sex offenses" as a crime of violence, the new definition lists "forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced)." U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii). This amendment took effect on November 1, 2008.

**[3]** We need not decide here whether this amendment abrogates *Lopez-Montanez*'s holding, however, because it cannot affect the calculation of Espinoza's sentence. Although a sentencing court must generally apply the Guidelines in effect at the time of sentencing, the Ex Post Facto Clause requires a court to apply instead the Guidelines in effect at the time of the current offense "if the guidelines have undergone substantive changes that would disadvantage the defendant." *United States v. Stevens*, 462 F.3d 1169, 1170 (9th Cir. 2006). A change that would overrule an existing precedent constitutes such a "substantive" change. *See United States v. Smallwood*, 35 F.3d 414, 417 n.8 (9th Cir. 1994) (citing, among others, *United States v. Saucedo*, 950 F.2d 1508 (10th Cir. 1991)). Thus, if the 2008 amendment to § 2L1.2's crime of violence definition abrogated *Lopez-Montanez*, it was substantive and therefore cannot be applied to Espinoza. In that case, the Guideline in effect at the time of his March 2008 attempted entry offense—which, like the Guideline applied in *Lopez-Montanez*, enumerated "forcible sex offenses," without the elaboration, as a crime of violence, U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2007)—would apply. *Lopez-Montanez*'s holding that sexual battery under section 243.4(a) does not categorically constitute a "forcible sex offense" therefore applies here, regardless of the effect of the 2008 amendment. Espinoza's conviction under section 243.4(a) thus does not categorically constitute a crime of violence under either the element prong or the enumerated offense prong of the § 2L1.2 definition.

## 2. Penetration with a Foreign Object under California Penal Code section 289(a)(1)

At the time of Espinoza's conviction, section 289(a)(1) provided:

> Every person who causes the penetration, however slight, of the genital or anal openings of any person or causes another person to so penetrate the defendant's or another person's genital or anal openings for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years.

Cal. Penal Code § 289(a)(1) (1999). We address in turn whether this offense categorically qualifies as a crime of violence under the element prong or the enumerated offense prong of the § 2L1.2 definition.

### a. Element Prong

**[4]** We have made clear that the force required under the element prong of the § 2L1.2 crime of violence definition "must actually be violent in nature." *Grajeda*, 581 F.3d at 1191 (quoting *Lopez-Montanez*, 421 F.3d at 929). Thus, to constitute a categorical crime of violence under the element prong, section 289(a)(1) must only punish conduct that involves the use, attempted use, or threatened use of violent physical force against another. It does not.

**[5]** Rather, section 289(a)(1) applies when a defendant accomplishes a penetration proscribed by the statute by any of several enumerated means, including "by means of . . . duress."[5]

---

[5]Because we conclude that accomplishing a penetration by means of duress does not necessarily involve the use, attempted use, or threatened use of force under the element prong, we need not address Espinoza's argument that accomplishing a penetration "by means of . . . fear of immediate and unlawful bodily injury" likewise does not involve such a use of force.

Cal. Penal Code § 289(a)(1). Duress does not necessarily involve the use, attempted use, or threatened use of violent physical force. As California courts have explained, "duress" under section 289(a) "involves psychological coercion" and can arise from "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to first, perform an act which otherwise would not have been performed, or, second, acquiesced [sic] in an act to which one otherwise would not have submitted." *People v. Senior*, 5 Cal. Rptr. 2d 14, 20 (Cal. Ct. App. 1992) (internal quotation marks omitted). Although threatening "force, violence, or danger" might constitute a threatened use of violent physical force, threatening "hardship or retribution" does not necessarily involve any threat, use, or attempted use of violent physical force.

Indeed, the state has repeatedly applied section 289(a)(1) to defendants who penetrated their victims by means of duress in ways that involved no use or threatened use of violent physical force. In *People v. Minsky*, for example, a defendant was convicted under section 289(a) for posing as a lawyer and tricking women into believing that a loved one had just been arrested and was facing mandatory jail time for a hit-and-run, and then posing as the hit-and-run victim or witness and offering to drop the charges or to refuse to testify if the woman submitted to sex acts. *People v. Minsky*, 129 Cal. Rptr. 2d 583, 584-85 (Cal. Ct. App. 2003), *review granted and then dismissed*, 105 P.3d 115 (2005).[6] An intermediate California appellate court affirmed this conviction, concluding that the defendant accomplished the crime by means of duress by "pos[ing] a threat of . . . retribution," *i.e.* "payback or

---

[6]Although we ordinarily should not cite opinions for which the California Supreme Court granted review, *see* Cal. R. Ct. 8.1105(e)(1), we can appropriately rely on this case to show that the state has actually applied section 289(a)(1) to conduct that does not involve the use, attempted use, or threatened use of violent physical force. *See Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 876 n.3 (9th Cir. 2008).

revenge." *Id.* at 586-87. Similarly, in *People v. Cardenas*, a defendant was convicted under section 289(a) for inducing his victims to consent to sex acts by pretending to be a faith healer who could cure them. 26 Cal. Rptr. 2d 567, 568 (Cal. Ct. App. 1994). Again, the intermediate court affirmed the conviction, explaining that the defendant had accomplished the penetrations by means of duress, and that physical force "may, but need not[,] be present to have duress." *Id.* at 573-74.

**[6]** These cases conclusively establish that section 289(a)(1) sometimes punishes conduct that does not involve the "use, attempted use, or threatened use of physical force against the person of another." Section 289(a)(1) therefore does not categorically qualify as a crime of violence under the element prong of § 2L1.2's definition.

*b.   Enumerated Offense Prong*

**[7]** For similar reasons, we also conclude that section 289(a)(1) does not categorically qualify under the enumerated offense prong as a "forcible sex offense" as our precedents have defined that term. We have held that a "forcible sex offense" must have an element of "the use of some force outside of the act of unwanted penetration." *United States v. Bolanos-Hernandez*, 492 F.3d 1140, 1144 (9th Cir. 2007). Although the offense need not involve "the heightened level of force needed to qualify a crime under § 2L1.2's" element prong, *id.* at 1145, the force involved must be physical, as opposed to psychological, *see Lopez-Montanez*, 421 F.3d at 929-30 (concluding that sexually touching a victim by "unlawfully restrain[ing]" him or her using only psychological force would not constitute a "forcible sex offense").[7]

---

[7]Again, we acknowledge that the 2008 amendment to the Sentencing Guidelines Manual may well have abrogated our holding in *Lopez-Montanez*. As we explained above in section III.A.1.b, however, any effect that the 2008 amendment has on our precedent cannot apply to Espinoza's sentence because he committed his crime before the amendment took effect.

**[8]** Section 289(a)(1) punishes conduct that does not involve any physical force "outside of the act of unwanted penetration." In *People v. Hernandez*, an intermediate California court of appeal upheld a section 289(a)(1) conviction where "[n]othing in the record indicate[d] that defendant applied any force greater than that necessary to commit the sexual penetration offense." No. E029254, 2002 WL 1734011, *2 (Cal. Ct. App. July 26, 2002).[8] The defendants in *Minsky* and *Cardenas*, described above, likewise were convicted under section 289(a) even though they did not use any physical force outside the act of unwanted penetration. *See* Minsky, 129 Cal. Rptr. 2d at 584-85, 589; *Cardenas*, 26 Cal. Rptr. 2d at 570, 573-74. Because section 289(a)(1) applies to conduct that does not involve any such "extra" physical force, it does not categorically constitute a "forcible sex offense" and accordingly does not categorically constitute a crime of violence under the enumerated offense prong of § 2L1.2's definition.

## B.   Modified Categorical Approach

**[9]** Because we conclude that neither of Espinoza's convictions categorically qualifies as a crime of violence, we must next determine whether either of his convictions constitutes a crime of violence under the modified categorical approach.[9] The modified categorical approach "requires us to determine—if we can—whether the conduct for which the defendant was convicted fits within the federal definition" of

---

[8]Although we ordinarily should not cite unpublished opinions, we can appropriately rely on this case to show that the state has actually applied section 289(a)(1) to conduct that falls outside of our definition of "forcible sex offenses." *See Vizcarra-Ayala*, 514 F.3d at 876 n.3.

[9]Contrary to the government's contention, Espinoza argued before the district court that his prior convictions do not qualify as crimes of violence under the modified categorical approach. We therefore review de novo— not for plain error, as the government urges—the district court's conclusion that Espinoza's convictions constituted crimes of violence under the modified categorical approach. *Rodriguez-Rodriguez*, 393 F.3d at 856.

a crime of violence. *United States v. Snellenberger*, 548 F.3d 699, 701 (9th Cir. 2008) (en banc). As applied here, we must determine whether the conduct for which Espinoza was convicted involved the "use, attempted use, or threatened use of [violent] physical force against the person of another" (as the element prong requires) or involved "the use of some force outside of the act of unwanted penetration" (as the enumerated offense prong requires). *See Grajeda*, 581 F.3d at 1189-91; *Bolanos-Hernandez*, 492 F.3d at 1144. We can conclude that a conviction qualifies as a crime of violence under the modified categorical approach "only if the record of conviction shows the jury 'necessarily' found all of the generic elements,[10] or the defendant 'necessarily' admitted all of the generic elements in a plea." *Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1131 (9th Cir. 2007) (citing *Taylor*, 495 U.S. at 599-602 and *Shepard v. United States*, 544 U.S. 13, 19-21 (2005)). Here, the government has offered a criminal information and abstract of judgment as well as a California appellate court decision affirming Espinoza's convictions and summarizing the facts of his case. None of these documents, considered individually or collectively, establishes that the jury "necessarily" found that Espinoza used, attempted to use, or threatened to use force that would render his convictions crimes of violence.

## 1.  Criminal Information and Abstract of Judgment

The criminal information and abstract of judgment, taken together, do not establish that Espinoza was "necessarily" convicted of using force that would render his convictions crimes of violence.

---

[10]By "generic elements," we mean those elements that would qualify the crime as a crime of violence. Thus, for example, if the conviction record established that Espinoza was necessarily convicted of accomplishing the unlawful penetration by means of force, as opposed to by means of duress, we could conclude that he had been convicted of a crime of violence as defined by § 2L1.2.

**[10]** In the section 243.4(a) sexual battery count, the information charged Espinoza with "willfully and unlawfully touch[ing] an intimate part of Jane Doe, while said person was unlawfully restrained by said defendant(s) Arvin Espinoza Morales, against the will of said person and for the purpose of sexual arousal, sexual gratification, and sexual abuse." The abstract of judgment shows only that Espinoza was convicted by jury of this crime. Neither the information nor the abstract of judgment clarifies the type of unlawful restraint used, and neither document even mentions any use of force. The information and abstract of judgment therefore cannot establish that the jury "necessarily" convicted Espinoza of violating section 243.4(a) based on conduct involving the use of force.

**[11]** In the section 289(a)(1) penetration by a foreign object count, the information charged Espinoza with accomplishing the unlawful penetration "by force, violence, duress, menace and fear of immediate *and* unlawful bodily injury on the victim or another."[11] (emphasis added). Even though the state charged Espinoza in the conjuctive—with accomplishing the penetration by means of force, violence, duress, menace *and* fear—this charge could have supported a conviction based on duress alone. Under California law, a jury could have convicted Espinoza if it found that he had accomplished

---

[11]That count of the information reads in full:

On or about June 18, 1999, in the above named judicial district, the crime of ANAL & GENITAL PENETRATION BY FOREIGN OBJECT, FORCE & VIOLENCE, in violation of PENAL CODE SECTION 289(a)(1), a felony, was committed by Arvin Espinoza Morales, who did unlawfully cause the penetration of the genital and anal openings of another and cause another person to penetrate the defendant's and another person's genital and anal openings for the purpose of sexual arousal, gratification, and abuse by a foreign object, substance, instrument and device and by an unknown object accomplished by force, violence, duress, menace and fear of immediate and unlawful bodily injury on the victim or another.

the penetration by any one of the alleged means. *See In re Bushman*, 463 P.2d 727, 732 (Cal. 1970) ("Merely because the complaint is phrased in the conjunctive . . . does not prevent a trier of fact from convicting a defendant if the evidence proves only one of the alleged acts."), *overruled in part on other grounds by People v. Lent*, 541 P.2d 545, 548 n.1 (Cal. 1975). The jury instructions in the state court case—which Espinoza submitted after oral argument and of which we take judicial notice**¹²**—confirm this. These instructions directed the jury that it "must be proved" that the "penetration was accomplished by [the use of force, violence, duress, menace *or* fear of immediate and unlawful bodily injury to [the alleged victim]." (brackets in original; emphasis added). These instructions thus permitted the jury to convict Espinoza if it found that he accomplished the penetration by means of duress alone. The abstract of judgment provides no additional information, but rather simply reflects that the jury convicted Espinoza of violating section 289(a)(1). The criminal information and abstract of judgment, taken together, therefore do not establish that Espinoza was necessarily convicted of using force that would render his conviction a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii)'s enhancement.

## 2.   State Appellate Court Opinion

[12] The unpublished state appellate court opinion affirming Espinoza's convictions and summarizing the facts underlying those convictions likewise does not establish that the jury "necessarily" convicted him of conduct that would amount to a crime of violence. Indeed, the state court opinion does not even purport to describe the facts or elements that the jury "necessarily" found. The opinion examines whether Espinoza was denied his right under the Vienna Convention to consult with consular representatives after his arrest. The

---

**¹²**On June 18, 2010, Espinoza-Morales filed an unopposed motion requesting that we take judicial notice of the jury instructions from his state trial. We grant the motion.

facts of Espinoza's crime were not relevant to this question, and the state court presented them only as background. The opinion nowhere states or even suggests that the jury necessarily found the facts recited to be true.[13] The state court opinion therefore clearly does not satisfy *Taylor*'s requirement that a document must reflect what "the jury necessarily had to find" in order to establish that an offense constituted a crime of violence under the modified categorical approach. Because the state court opinion does not satisfy this requirement, we need not consider whether such an opinion, if it did show what the jury necessarily found, would be sufficiently reliable for a court to consider when applying the modified categorical approach. *See United States v. Strickland*, 601 F.3d 963, 968 (9th Cir. 2010) (en banc); *Snellenberger*, 548 F.3d at 701-02.

The dissent suggests that *Taylor* permits us to look to the facts underlying a conviction so long as we do not "put the Defendant on trial" for his earlier convictions, re-weigh the evidence, or make witness credibility determinations. Dissent at 13857. This misapprehends *Taylor*. To be sure, the Court in *Taylor* expressed concern that inquiring into the facts underlying a defendant's prior conviction could result in such re-trials and accordingly would pose "practical difficulties and potential unfairness." *See Taylor*, 495 U.S. at 601. In particular, the *Taylor* Court noted that a court often would have to look to "the Government's actual proof at trial" to determine the defendant's actual conduct in the prior case. *Id.* This would lead to many tricky questions, as the Court explained:

> Would the Government be permitted to introduce the trial transcript before the sentencing court, or if no transcript is available, present the testimony of witnesses? Could the defense present witnesses of its own and argue that the jury might have returned a

---

[13]Without explanation or citation, the dissent conclusorily states that this state court opinion does in fact recite the "necessary findings of the jury." Dissent at 13857. This contention is wholly unsupported.

> guilty verdict on some theory that did not require a
> finding that the defendant committed [the generic
> crime[14]]? If the sentencing court were to conclude,
> from its own review of the record, that the defendant
> actually committed [the generic crime], could the
> defendant challenge this conclusion as abridging his
> right to a jury trial?

*Id.* Contrary to the dissent's suggestion, the Court did not
avoid these "daunting" problems by simply barring mini-trials
at which evidence would be re-weighed and witnesses's credi-
bility re-evaluated. *Id.* Rather, to avoid these types of prob-
lems, the Court expressly held that a trial court applying the
modified categorical approach must generally "look only to
the fact of conviction and the statutory definition of the prior
offense." *Id.* at 602.

The Court did, however, allow for a very limited inquiry
into the underlying facts. Specifically, the Court authorized
trial courts to look "beyond the mere fact of conviction in a
narrow range of cases where a jury was actually required to
find all the elements of [the generic crime]." *Id.* For example,
a court could conclude that a conviction was for the generic
crime where "the indictment or information and jury instruc-
tions show that the defendant was charged only with [the
generic crime], and that the jury necessarily had to find [the
generic element] to convict." *Id.* In other words, a conviction
would qualify as a conviction for the generic crime under the
modified categorical approach only if the court could ascer-
tain, without looking to the underlying facts, that the jury nec-
essarily found that the defendant engaged in conduct
amounting to the generic crime.

Because a jury cannot convict a defendant of conduct not
charged in the indictment or information, we know that a jury

---

[14]"Generic crime" refers to the crime identified as a crime of violence
in the statute or Guideline.

"necessarily" convicted a defendant of the generic crime where the indictment or information charges only the generic crime. Similarly, where the jury instructions require the jury to find the elements of the generic crime, we know that the jury "necessarily" convicted the defendant of those elements. Here, by contrast, where we do not have such limiting charging papers and where the jury instructions do not narrow the charge to the generic crime, we cannot know what the jury necessarily convicted the defendant of, and we cannot know the conduct in which the defendant engaged without looking to the underlying facts. *Taylor* precludes us from doing so. *See id.* at 602. Indeed, the Court in *Shepard* rejected the suggestion that courts should be permitted to look at a transcript of a jury trial to conclude that the defendant was convicted of the conduct shown by the evidence presented at trial. *Id.* at 22. If we may not look to a jury trial transcript, we certainly may not look to a state court's description of the facts of a crime, which simply summarizes the testimony and evidence reflected in that transcript.

**[13]** Because neither the state court opinion nor the criminal information and abstract of judgment establish that the jury necessarily convicted Espinoza of using force, the government has not met its burden to establish that either of Espinoza's convictions qualify as a crime of violence under the modified categorical approach. The district court accordingly erred in applying the 16-level crime of violence enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) in calculating Espinoza's advisory Guidelines range.

## C.   *Scope of Remand*

The parties dispute whether we should allow the district court to consider new evidence on remand. As a general rule, when the district court errs in sentencing, we should vacate and "remand for re-sentencing on an open record—that is, without limitation on the evidence that the district court may consider." *United States v. Matthews*, 278 F.3d 880, 885 (9th

Cir. 2002) (en banc). We may depart from this general rule, however, when "additional evidence would not [change] the outcome" or when "there was a failure of proof after a full inquiry into the factual question at issue." *Id.* at 886. This case falls within the second exception: the government submitted evidence to establish that Espinoza's convictions constituted crimes of violence under the modified categorical approach, but it failed to submit evidence sufficient to meet its burden. In light of this failure, we decline to give the government a second bite at the apple. Further, because the universe of documents that the sentencing court may consider is limited, and because the government has not identified—at oral argument or in its post-argument response to Espinoza's motion for judicial notice of the jury instructions—any additional materials it might be able to offer at re-sentencing, we remand for re-sentencing on the existing record.

## IV.   CONCLUSION

**[14]** Neither of Espinoza's convictions categorically qualifies as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Moreover, because nothing in the record of conviction shows that the jury necessarily convicted Espinoza of conduct involving force, his convictions do not qualify as crimes of violence under the modified categorical approach. We accordingly vacate Espinoza's sentence and remand for re-sentencing on the existing record.

**VACATED AND REMANDED.**

---

WALTER, District Judge, dissenting:

After a thorough review of the facts and the law pertaining to this case, I respectfully dissent.

The unpublished opinion of the Court of Appeal, Fourth District for the State of California recounts the background

facts surrounding the Defendant's 1999 conviction for "anal and genital penetration by foreign object using force (Pen. Code, § 289, subd. (a)(1))" and "sexual battery by restraint (§ 243.4, subd. (a))." According to that court:

> On June 18, 1998, Jane Doe was walking from a train station in Ontario to pick up her son at his baby-sitter's house. Defendant came from behind, put his arm around her neck and placed her in a headlock. Jane Doe did not know defendant and had never seen him before.
>
> Defendant tried to kiss Jane Doe on the lips, but she turned her face away. He pulled her face toward him and kissed her on the face and neck and sucked on her neck. Defendant then touched Jane Doe's breast and moved his hand down Jane Doe's shorts. He rubbed his hand on her vagina and put at least one finger inside of it. He continued to keep his other arm around her neck and tightened his grip. During this ordeal, Jane Doe kept telling defendant "no," and that she had to leave.
>
> Jane Doe unsuccessfully tried to use her elbow to escape defendant's hold on her. When she tried a second time, defendant let go.

Subsequently the Defendant was apprehended and convicted by a jury. He received an 8 year sentence. After being released, he was deported.

In January 2009, the Defendant plead guilty to attempted reentry following deportation in violation of 18 U.S.C. § 1326. Faced with the facts from the Defendant's 1999 conviction, the District Court stated at sentencing:

> The main bone of contention here obviously is whether the Defendant's prior felony sex offense

> conviction is or is not a crime of violence justifying a 16-level upward adjustment under the guidelines. It appears to the Court that it is whether you look at [it] under [a] categorical or modified categorical approach as set forth in *U.S. v. Taylor* . . . It seems clearly in the definitions of, in the guidelines, what we have is a crime of violence.

He was sentenced to 57 months. The Defendant appeals the 16-level increase the District Court imposed on his sentence as a result of the Court's finding that the Defendant had previously been convicted of a "crime of violence." The Defendant's attorney did not dispute, at sentencing nor in her sentencing memorandum, the facts as set out by the state appellate court in 1999.

As the majority finds, the modified categorical approach states that a conviction constitutes a crime of violence "only if the record of conviction shows the jury 'necessarily' found all of the generic elements, or the defendant 'necessarily' admitted all of the generic elements in a plea." *Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1131 (9th Cir. 2007) (*citing Taylor v. United States*, 495 U.S. 575, 599-602 (1990), and *Shepard v. United States*, 544 U.S. 13, 19-21 (2005)).

When the Supreme Court created the modified categorical approach in *Taylor*, the Court issued an admonition to sentencing judges regarding the "practical difficulties and potential unfairness of a factual approach" to determining sentencing enhancements for prior convictions. 495 U.S. at 601. The Court rightly worried that sentencing courts might be looking at convictions from years or even decades prior with scant record in order to determine if prior convictions qualified for sentencing enhancements. This, in the Court's opinion, could lead to a whole new "mini-trial" by the sentencing judge thus implicating the defendant's Sixth Amendment right. In this instance, the majority believes that the sentencing judge disregarded the *Taylor* admonition. I do not

believe that the sentencing judge has run afoul of *Taylor*. No re-weighing of the evidence has occurred. The sentencing judge made no witness credibility determinations. The sentencing judge did not put the Defendant on trial for his 1999 convictions. Instead, the sentencing judge merely looked to an opinion issued by three of his state court brethren which recited the underlying facts and necessary findings of the jury.

The question presented here is whether or not the District Court could rely on the facts as elucidated by the State Appellate court. Recently, this Court in an *en banc* decision expanded the materials that a sentencing court could rely on in determining a sentence enhancement. *United States v. Strickland*, 601 F.3d 963 (9th Cir. 2010) (*en banc*). The Court held that a district court could rely on an out of state docket sheet in determining if the prior conviction was a predicate offense for sentencing purposes. *Id.* at 968.

Here, I believe that the unpublished State Court Appellate opinion satisfies the requirement of reliability. First, it was prepared by the court itself. Secondly, as stated unequivocally in oral arguments, appellate judges plainly have a legal and professional obligation to get the facts right. Finally, the Defendant had the right to examine and challenge the opinion's content. Here, the Defendant could have challenged the State Appellate Court's factual findings after publication if he disagreed with the court's factual characterization. He did not do so. Accordingly, the State Appellate Court opinion is reliable pursuant to *Strickland* and *United States v. Snellenberger,* 548 F.3d 699, 701 (9th Cir. 2008)(*en banc*).

When, as here, a defendant puts the victim in a headlock and choked her before fondling her breasts and penetrating her with a foreign object, I am left with no doubt that he used violent physical force to achieve his objective. Defendant has never attempted to recast or recharacterize the facts of his 1999 conviction.

Given these facts, the District Judge correctly found the Defendant's 1999 convictions were "crimes of violence" as contemplated by the United States Sentencing Guidelines.

What the court below knew from the record in this case, beyond doubt, is that the Defendant committed a "forcible sex offense" which is an enumerated "crime of violence." As this Court, *en banc*, stated in its closing in *Strickland*, "[t]he modified categorical approach is not a judicial version of three-card monte. Rather, the challenge is to determine whether a conviction under a non-categorical state statute was clearly *based on facts* that meet the federal generic definition of the crime." 601 F.3d at 970. (emphasis added).

As such, I would AFFIRM the sentence of the District Court.